No. 44,710

BELDON BOWEN, Administrator c. t. a. of the Estate of Marcelline M. Ward, Deceased, *Appellant*, v. NORMAN P. LEWIS, *Appellee.*

(426 P. 2d 238)

Opinion filed April 8, 1967.

*Charles A. Walsh,* of Concordia, argued the cause, and *William J. Walsh,* of Concordia, was with him on the briefs for the appellant.

*Charles W. Harris,* of Wichita, argued the cause, and *Lee R. Stanford,* of Concordia, and *Paul M. Buchanan,* of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This appeal stems from a controversy over the statute of limitations in an action to bring assets into a decedent's estate.

The facts material to the statute of limitations upon which summary judgment was rendered may be summarized.

Mrs. Marcelline M. Ward was for many years the owner of the Baron's Hotel in Concordia, Kansas. During the year 1953, Mrs. Ward became involved in an income tax controversy with the federal government for the years 1943 through 1952. The amount involved was some $93,000 plus interest.

Mrs. Ward, on May 19, 1953, transferred title to real property on which the hotel was located to her son, Norman Lewis, and to her daughter, Margaret L. Rogers. On June 2, 1953, the Internal Revenue Service filed tax liens on the property of Norman Lewis claiming that as a transferee, he had become liable for his mother's personal income tax. On June 5, 1953, Lewis and his sister reconveyed, by quit claim, to their mother all interest or ownership in the real property. A federal tax controversy then arose during the mother's lifetime in which the Internal Revenue Service was attempting to collect the mother's taxes from the son, Norman Lewis, the defendant herein. The mother died on August 10, 1955. On August 20, 1955, the mother's will was admitted to probate and Norman Lewis was appointed and qualified as executor.

Norman Lewis served as executor until October 1, 1962, when, on his own motion and resignation, he was relieved therefrom and Beldon Bowen was appointed as the successor administrator c. t. a.

On September 29, 1964, the action which we now have under consideration was filed. Additional facts may be taken from the allegations of the pleadings.

As to the item in the petition which was subjected to summary judgment, it was alleged:

"Plaintiff further alleges, that in the course of the administration of the estate of said decedent, the defendant was involved in a controversy with the Treasury Department of the United States Government over the failure of decedent to pay taxes legally assessed upon the income and the property of the deceased, Marcelline M. Ward, and in the course of the controversy, it came to light that the defendant, prior to the death of his mother, *had appropriated* $13,300.00 of money belonging to the said Marcelline M. Ward.

Thereafter and on October 31, 1956, the defendant filed in the Probate Court of Cloud County, Kansas, where the state was being administered, a verified supplemental inventory reflecting an *indebtedness* by the defendant to the estate of his mother in the sum of $12,300.00, which was then owing by him and was and is an asset of the estate of said decedent." (Emphasis supplied.)

The answer insofar as material to the specific item in controversy alleged:

"Further answering the defendant states that the sum of $13,300.00, mentioned in paragraph seven of the plaintiff's petition was in fact a gift from his mother Marcelline M. Ward, to him and not a loan.

"Further answering the defendant alleges that the verified supplemental inventory mentioned in plaintiff's petition paragraph seven, and a collateral agreement made by him to the U. S. Treasury Department, Internal Revenue Service, in conjunction therewith a copy of which is hereto attached, marked Exhibit 'A', and made a part hereof, were obtained from the defendant by the U. S. Treasury Department, Internal Revenue Service by duress of the defendant, in this, that the officials of said agency then and then threatened the defendant that if he did not do so, he would be prosecuted to the full extent of the law for the offense as an accessory to an alleged Federal Income Tax evasion of his mother Marcelline M. Ward, and the defendant, solely in consequence of such threats and in the fear that said officials would execute them, made delivered and filed said instruments and not otherwise."

The answer also raised the statute of limitations as an alternative defense. Exhibit A, mentioned in the answer, will be considered later in more detail.

On October 21, 1965, defendant filed his motion for summary judgment on the ground the claim was barred by the statute of limitations. The motion was presented by oral argument of the parties and then submitted on briefs. On December 16, 1965, the trial court submitted its memorandum decision in which it concluded that the claim was based on an oral contract and barred by the three year statute of limitations. Summary judgment was entered for the defendant.

The plaintiff has appealed.

The issues are somewhat confused due to the fact that there were other controverted claims between the parties which are not material to the determination of the specific question before us. The appellant discusses some fourteen alleged errors in his brief. It may help us to sort out the pertinent issues if we stay close to the general statement found in the appellant's brief, which reads:

". . . This appeal is concerned only with the question of whether or not the claim of the estate arising out of the written collateral agreement is barred by the statute of limitations.

"It is to be noted that the collateral agreement attached as Exhibit 'A' to the Defendant's Amended Answer, is neither dated nor signed. In other words, it is an unsigned copy of the document. This document, together with the Supplemental Inventory, mentioned in paragraph 7 of the petition and paragraph 6 of the Amenned [sic] Answer, constitute the basis of appellant's claim that appellee was indebted to his mother's estate in the sum of $12,300.00, together with interest at the legal rate."

The appellant first suggests that discovery was incomplete when the motion for summary judgment was considered and that the record clearly reflects material issues of fact. It may be said that appellant's position would be correct if the case were to be tried on the merits. However, such matters did not reflect on the question of the statute of limitations. If the case was to be determined by the statute of limitations the factual issues to which reference is made were immaterial. Although summary judgment should not be rendered if there remains a genuine issue of fact (*Secrist v. Turley*, 196 Kan. 572, 412 P. 2d 976; *Brick v. City of Wichita*, 195 Kan. 206, 403 P. 2d 964), the fact is not genuine unless it has legal probative force as to a controlling issue. In *City of Ulysses v. Neidert*, 196 Kan. 169, 409 P. 2d 800, we held:

"Where a defending party pleads a statute of limitations and moves for summary judgment, and it appears that the action is barred by the appropriate statute of limitations and there is no genuine issue as to any material fact in connection with such statute, or such motion, then the motion for summary judgment should be granted." (Syl. 3.)

Although not necessary to the conclusion reached by the trial court in its memorandum decision, the trial court does appear to hold that the statute of limitations continued to run in appellees favor and against the estate while he was executor. Appellant takes serious issue with this ruling. We are inclined to agree with appellant. The general rule is found in 33 C. J. S., Executors and Administrators, § 182, p. 1156, where it is stated:

"*The duty of the personal representative to collect debts due the estate of his decedent is not changed by the fact that he is the debtor;* but he must, if solvent or able to pay, pay the debt and account for the amount thereof as assets; and the security given for the debt is not discharged until payment. *No bar of limitations should operate in favor of the representative as long as he remains accountable for the general assets of the estate,* but where the debt is barred before the executor takes office he is not chargeable with the debt. . . ." (Emphasis supplied.)

Although no Kansas cases are cited in the briefs touching directly on the question and our limited search has disclosed none, we have no hesitancy in placing our approval on the general rule as above stated. It follows that the statute of limitations was tolled as to the claim against the executor during the time he served in such representative capacity and such time must be deducted from the period controlling the statute of limitations.

Before considering appellant's main contention there are a few additional facts that should receive attention.

The claim is styled by the petition as "appropriated" monies and as an "indebtedness" of appellee. It appears clear that the question was presented to the district court as a debt based on an oral contract which would make the three year statute of limitations applicable.

It may also be stated that it is not controverted that the appellee received the funds from his mother on which the claim and collateral agreement is based during the period of June to October, 1952.

If we omit the months of June through September and start with October 31, 1952, as the latest date when the alleged claim accrued and extend the time to September 29, 1964, when the action was filed we have a total period of approximately twelve years from the time the claim accrued until the action was commenced. If we deduct the period during which appellant was executor (August 20, 1955, to October 1, 1962), we have a period of four years and ten months from the time the claim accrued during which the action could have been commenced. The three year statute of limitations would have run.

The appellant relies on the collateral agreement attached to the answer as Exhibit A to remove the bar of the statute or as a new written obligation. The instrument will be of no assistance unless presented in its entirety. It reads:

"Collateral Agreement

"Subject: Norman Lewis, *Transferee*

"Docket No. 51094

"Transferee Liability

"In consideration of the approval by, or on behalf of, the Commissioner of Internal Revenue, of a certain proposal of settlement that Norman and Adele Lewis incurred no transferee liability for the unpaid debts of Marcelline M. Ward, deceased, based on the transfer, on May 19, 1953, of an undivided one-half interest in the Barons Hotel property, Concordia, Kansas, as determined by

the Commissioner in the proceeding pending before the Tax Court of the United States at Docket No. 51094 and, as an inseparable term and condition of said settlement; the undersigned, hereby voluntarily and upon the advice of counsel:

"Represents as a fact, to the U. S. Government, that moneys totalling $13,300.00 supplied by Marcelline M. Ward, mother of Norman Lewis, for his use in the construction of a certain motel property identified as the 'Barons Motel', the title to which is solely in Norman Lewis, constituted a loan from said Mrs. Ward to said Norman Lewis. $1,000.00 has been paid on account. He is indebted to the Estate of Marcelline M. Ward, deceased, for the unpaid balance of $12,300.00.

"The intent, and effect, of this certification is that the $12,300.00 is an asset of the Estate of Marcelline M. Ward and, furthermore, that said Norman Lewis will make payment to the Estate of Marcelline M. Ward, in order for said estate to satisfy, in part therewith, the unpaid Federal income tax liability of Marcelline M. Ward for the years 1943 to 1952, inclusive.

| "Witness _____ | date | Norman Lewis | date |
| "Witness _____ | date | Executor Estate of Marcelline M. Ward" | date |

The instrument, as attached to the answer, was not signed or dated. However, for the purpose of the motion for summary judgment it must be assumed that the exhibit was a copy and that the original had been signed as indicated. The date does not appear to be material on the issues now before us but it would appear the instrument was dated the latter part of the year 1958.

The trial court considered the allegations of plaintiff's petition as an action on a loan to appellee by his mother, and stated:

". . . plaintiff claims the debt was acknowledged and the same reinstated by virtue of authority of K. S. A. 60-520. This provision of the statute provides acknowledgment must be of an existing liability, debt or claim, and that such acknowledgment or promise must be in writing signed by the party to be charged thereby. It should be noted further that this collateral agreement was not made to defendant's decedent mother or to her estate but was made to the Internal Revenue Service of the U. S. Treasury Department. . . ."

We must agree with the conclusion of the trial court. The provisions of K. S. A. 60-520 providing for acknowledgment of liability as extending the time for bringing an action anticipates a voluntary new promise to pay the debt. The new promise must be made to the creditor or his representative. An acknowledgement to another creditor will not suffice. In *Burdue v. Lamb*, 120 Kan. 502, 503, 243 Pac. 1029, we stated:

"This court in *Sibert v. Wilder*, 16 Kan. 176, said:

"'An acknowledgment of a debt, to take the case out of the statute of limita-

tions, must be made, not to a mere stranger, but the creditor, or someone acting or representing him.'

"That rule was again declared in *Schmucker v. Sibert,* 18 Kan. 104, and was followed in *Investment Co. v. Bergthold,* 60 Kan. 813, 58 Pac. 469. See, also 37 C. J. 1137, 17 R. C. L. 909; and 25 L. R. A., n. s., 806, note."

The appellant raises, but does not appear to have briefed, the contention that listing the claimed indebtedness in a supplemental inventory of the decedent's estate was a sufficient acknowledgment of the indebtedness. The suggestion has no merit. The representative of the estate is chargeable for his own debts to the estate unless they are uncollectible. It is the representative's duty to list the indebtedness so that the court can determine whether it is collectible and the representative may raise such defenses as he may have including the statute of limitations.

The appellant now contends that the collateral agreement was "a new written promise to pay his mother's estate $12,000 in settlement of the litigation then pending" with the Internal Revenue Service, and was not "a mere acknowledgment of the original debt." He states: "It is a formal promise in writing and is a specific obligation."

The trial court did not pass on this question. Whether or not it was presented to the court below is not disclosed by the record. Regardless, the difficulty with this belated contention is that the appellant did not sue on the collateral agreement.

The action was brought by the representative of the estate on an indebtedness which the appellee owed his mother before her death. Had the action been brought on the collateral agreement many different questions might well have arisen. We would then have had before us an agreement made between the appellee and the Internal Revenue Service for the benefit of the federal government with the government's right to sue on the agreement and a much different question would have arisen as to the statute of limitations.

The pleadings had been filed for over a year before the pretrial conference. At no time during the pretrial and the argument on the motion for summary judgment did the appellant suggest an amendment to his petition changing the cause of action to one on the collateral agreement. At no time prior to the trial court's final determination did the appellant suggest a change in its theory of the case.

The case went to final judgment on the issue presented in the petition and it was too late thereafter for appellant to mend his hold.

The trial court must try the case on the issues framed by the pleadings or defined at the pretrial conference. Although the pleadings do not have the importance under the new code that they did formerly, they still serve the very important purpose of informing the adverse party of the nature of the claim or defense asserted. The simplified pleading permitted by K. S. A. 60-208 is possible because the issues can be defined at the pretrial conference. Once the issues are defined and the court proceeds to render final judgment the parties are bound thereby. The trial court has jurisdiction to decide only such issues as are raised by the pleadings or defined at the pretrial conference with the limited exception of new issues raised by evidence to which there is no objection. (*Green v. Kensinger,* 193 Kan. 33, 392 P. 2d 122; *Shriver v. Board of County Commissioners,* 189 Kan. 548, 370 P. 2d 124.)

Those wishing to research further the question of limiting issues may see 1A Federal Practice and Procedure, Barron and Holtzoff, §§ 242, 252 and 471.

What has just been said also applies to appellant's objection to the trial court's refusal to set aside the order for summary judgment and permit an amended petition and additional evidence.

We find no merit in appellant's contention that the appellee was estopped to deny the collateral agreement with the internal revenue department. The indebtedness of appellee to his mother, not the collateral agreement, was the basic claim put in issue.

Although we have not agreed with all the conclusions of the trial court, a carful examination of the record forces the conclusion that the claim was barred by the statute of limitations and defendant was properly granted a summary judgment.

The judgment is affirmed.

APPROVED BY THE COURT.