No. 44,788

LAWRENCE D. SHEHI, *Appellant,* v. SOUTHWEST RENTALS, INC., and
G. L. HERSH d/b/a ECONOMY PRINTERS, *Appellees.*

(428 P. 2d 838)

Opinion filed
June 10, 1967.

*David K. Clark,* of Manhattan, argued the cause, and *Maurice E. Vorhies,*
of Manhattan, was with him on the briefs for the appellant.

*Donald Patterson,* of Topeka, argued the cause, and *David H. Fisher, C. K.
Sayler, Jack L. Summers, Edwin D. Smith,* and *Jerry R. Palmer,* all of Topeka,
were with him on the briefs for the appellees.

The opinion of the court was delivered by

KAUL, J.: This was an action by the plaintiff, Lawrence D. Shehi,
against the defendants to recover damages for alleged injuries
caused by the independent acts or omissions of each defendant.
Plaintiff has appealed from an order sustaining a motion for sum-
mary judgment as to each defendant.

In his petition plaintiff alleged that defendant Southwest Rental
Inc. (referred to herein as Southwest), was engaged in the business
of leasing cars and trucks. That defendant Hersh was engaged in
the printing business in Manhattan and operated the business
under the name of Economy Printers.

On or about June 23, 1963, defendant Hersh rented a truck from
Southwest for the purpose of transporting heavy items of printing
equipment (printing press) from an unknown destination (Pitts-
burg, Kansas) to his place of business at 530 Freemont Street,
Manhattan. The plaintiff was requested by Hersh to help unload
the equipment from the truck. Plaintiff was injured when the
printing press was being unloaded.

Plaintiff alleged his injuries were caused by the negligence of
defendant, or defendants, in the following respects:

"(*a*) In failing to properly equip said truck with those items necessary to properly move and unload the equipment carried or to be carried thereon, the equipment being carried being known to the defendants;

"(*b*) In failing to properly instruct those persons renting equipment as to the proper method or used in loading or unloading equipment that might be carried or moved upon said truck;

"(*c*) In failing to properly advise the plaintiff and others as to the proper unloading of said equipment;

"(*d*) In failing to properly unload said equipment from said truck using those items of equipment which were necessary and proper to accomplish the job with safety;

"(*e*) In failing to properly supervise the unloading of said equipment thereby causing injury to the plaintiff."

Defendants filed a joint answer in which they denied negligence and alleged contributory negligence and assumption of risk on the part of plaintiff as affirmative defenses.

Interrogatories were submitted to and answered by all parties. Some written admissions of the plaintiff were received pursuant to K. S. A. 60-236. Plaintiff's deposition was taken on behalf of defendants. An affidavit of Gary Cromer, local agent for Southwest, was filed by defendants and affidavits of Olaf A. Jones, Clifford Bammes, Wilma Bammes and Charles W. Johr were filed by plaintiff. There is no contention that pretrial discovery had not been completed.

On entering judgment the trial court filed a memorandum of decision. As to Southwest, the trial court held in substance that its duty was contractual and the record reflected no breach upon which plaintiff could rely for his cause of action. As to defendant Hersh, the trial court found that plaintiff, by his testimony in his deposition, showed that he was contributorily negligent and that his negligence was the proximate cause of his injury, and further that he assumed any risk involved.

The plaintiff's contentions on appeal may be resolved into the proposition that there remained disputed questions of fact as to the negligence of both defendants and also as to the defenses of assumption of risk and contributory negligence in relation to the liability of defendant Hersh. The defendants support the conclusion of the trial court and in addition contend that the testimony of Shehi, in his deposition, completely absolves defendant Hersh of any actionable negligence.

This court has had numerous occasions since the enactment of K. S. A. 60-256 (*c*) to pass on the propriety of summary judgments

rendered pursuant thereto. Some of our recent decisions, in which we have discussed the standards of measurement involved, are *Bowen, Administrator v. Lewis,* 198 Kan. 605, 426 P. 2d 238; *Jarnagin v. Ditus,* 198 Kan. 413, 424 P. 2d 265; *Collins v. Meeker,* 198 Kan. 390, 424 P. 2d 488; *Green v. Kaesler-Allen Lumber Co.,* 197 Kan. 788, 420 P. 2d 1019; *Wilson v. Deer,* 197 Kan. 171, 415 P. 2d 289.

We would call particular attention to the opinion in *Secrist v. Turley,* 196 Kan. 572, 412 P. 2d 976, and *Brick v. City of Wichita,* 195 Kan. 206, 403 P. 2d 964, in which the subject was thoroughly treated, the purpose of the statute discussed, and guidelines for its usage announced.

We do not believe it necessary to reiterate in detail the import of the decisions referred to. By way of summation it can be stated that we have strictly adhered to the admonition of the statute (60-256 [*c*]) that a summary judgment may not be rendered unless:

". . . [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."

Most of the difficulty has arisen when it becomes necessary to determine what is a "genuine issue" and what is a "material fact." Standards by which these matters may be determined are set out in *Secrist v. Turley,* supra, where we said:

"It may be said that an issue of fact is not genuine unless it has legal controlling force as to a controlling issue. A feigned or imaginary issue is not a genuine issue. A disputed question of fact which is immaterial to the issues does not preclude summary judgment. If the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of a material fact. . . ." (p. 575.)

Considering the facts in the instant case to which the rules are to be applied we find that even though a summary judgment is not usually feasible in a negligence case (3 Barron and Holtzoff, Federal Practice and Procedure, Summary Judgments, § 1232.1, cited with approval in *Secrist v. Turley,* supra), the judgment rendered was a proper disposition of this case.

Conceding that issues were framed by the pleadings we turn then to consideration of the facts developed by the various pretrial discovery exhibits contained in the record. In determining whether the issues, framed by the pleadings, are maintained by the facts before us we are compelled to consider them in the light most favorable to plaintiff.

The facts, with one exception which will be pointed out in the course of the opinion, are gleaned entirely from the deposition of plaintiff.

Shehi was 46 years of age at the time of the accident and at the time was engaged in the moving business. It was a general transfer and storage business and consisted primarily of the moving of household goods and office equipment, some of which could be considered to be of a heavy nature such as safes, pianos and refrigerators. At the time of the accident Shehi owned and operated approximately thirty vehicles in his business in the Manhattan area. He was employed by the Zoeller Transfer and Storage Company from 1945 to 1961, when he purchased the company, since then he has been the owner and operator of the business known as Shehi Transfer and Storage Company.

Hersh operates a printing place known as the Economy Printers. The printing plant had been formerly owned and operated by a Mr. and Mrs. Best. After Mr. Best died Mrs. Best married the defendant (G. L. Hersh). Shehi had no knowledge of this marriage prior to the date of the accident and had never met Hersh until that date. Shehi had moved and unloaded equipment for Mr. Best on several occasions, some of the equipment weighing as much as 1500 to 2000 pounds. He had never done anything for Mr. and Mrs. Best for which he did not receive pay.

After receiving a call from Mrs. Hersh, Shehi picked up one of his employees, Charles E. Johr, and told him that he was going to unload something for Mrs. Best (Mrs. Hersh) and that he was doing it as a personal favor for her. When Shehi arrived at the printing plant the truck was in the alley near the back door. After inspecting the truck and printing press, Shehi, Johr and a Cecil Whiting went to the Shehi warehouse to pick up a pair of skids to be used in the unloading of the press. Shehi picked up a pair of solid oak skids about 10 to 12 feet long and two to four inches in their end dimensions. The skids had been used by Shehi for two to three years and on prior occasions he had unloaded objects weighing 2000 to 6000 pounds with them. The objects included 500 pounds of cable for the Kansas Power and Light Company and a 4000 pound laundry machine for the Manhattan Laundry. Shehi also obtained two pry bars from the warehouse. Some rope was used in securing the skids to a trailer hitch at the rear of the truck. There is a dispute as to the ownership of the rope. In his deposition

Shehi contended the rope belonged to Hersh and in answer to his interrogatories Hersh contended the rope belonged to Shehi.

Hersh observed to Shehi that the press weighed about 3500 pounds. Shehi replied he wouldn't doubt it. Hersh tied the skids to a trailer hitch at the rear of the truck with a rope. Shehi watched this operation and made no objection as to Hersh's method or any suggestions as to a better way of securing the skids. Shehi's testimony is narrated as follows:

"Prior to the time the press moved down the skids the witness checked to see if they were securely tied and they were. Hersh is the one who placed the skids in the way they were used, but the witness agreed that the method Hersh used was the only method that could be used. The skids were held and did not slip and the skids did not slip or slide during the process of unloading, and the manner in which the skids were held to the truck by the rope had nothing whatever to do with the cause of the accident.

". . . They were well secured. If there was anything wrong with the method used to attach these skids to the truck, it was unknown to the plaintiff prior to the accident."

In sizing up the printing press it was decided by both Shehi and Hersh that the press be turned before the unloading process was commenced. Johr, Hersh and Shehi turned the press about a half turn until the turning process was stopped at the suggestion of Shehi.

After the skids were attached to the truck the press was lifted onto the skids and allowed to slide down under its own force. At this time two men were standing on each side of the skids, Mr. Shehi was on the left or driver's side of the truck. He was standing close enough to have his hand on the press and was helping to balance it as it moved down the skids. When the press had moved approximately two or three feet down the skids, less than half way, Shehi remembers hearing a noise sounding like a rifle shot and then being underneath the printing press. Shehi stated that in his twenty years in the moving business he had never had a pair of skids break on him before.

It is obvious Shehi sized up the unloading operation and decided what equipment should be used and how the unloading should be undertaken. All decisions were either made or approved by him. Hersh's only participation in the preparation was securing the skids with the rope. Shehi approved Hersh's work and testified that the manner in which the skids were attached to the truck had nothing whatsoever to do with the cause of the accident. As we have stated,

the ownership of the rope is in dispute but since it did not break or slip this fact is immaterial.

We are compelled to agree with defendants that Shehi's testimony considered in the light most favorable to him nevertheless completely absolved Hersh of any actionable negligence.

Bearing in mind the warning as to the danger of summary judgment proceedings becoming a trial by affidavit, as expressed in *Brick v. City of Wichita,* supra, we have carefully examined the affidavits in opposition filed by plaintiff. We find nothing contained therein that puts in issue any material fact that could establish the negligence of either Hersh or Southwest on any of the grounds alleged by plaintiff.

In view of what has been said we need not lengthen this opinion by a further discussion of whether or not the judgment was properly rendered with reference to the defenses of assumption of risk and contributory negligence.

As to Southwest the written lease agreement under the terms of which the truck was rented to Hersh was received by the court as an exhibit attached to the affidavit of Gary Cromer which was secured by defendants. However, nothing stated in the affidavit nor anything concerning the lease agreement was controverted in any way by plaintiff. In his brief plaintiff concedes that Southwest did not breach the contract within the meaning of its terms. He contends that Southwest breached its common law duty as bailor to provide a chattel fit for its known and intended use, and that such duty extends to third persons. Plaintiff's contention fails for two reasons. First, by his own testimony, the chattel which caused his injury was not the truck furnished by Southwest, but the skids which were furnished by plaintiff.

Second, plaintiff's only complaint about the truck was that the bed was covered rather than open and that there were no holes in the rear of the truck bed in which skids could be secured. If, by viewing plaintiff's contentions in this regard in the most favorable light possible, it could be said the defects violated the accepted principle that a bailor had a duty to exercise due care to furnish chattels reasonably fit for the purpose of the bailment and for its known use; plaintiff still could not prevail.

We agree with the principle establishing the bailor's duty but we also agree with the equally well accepted exception thereto as stated in 8 C. J. S., Bailments, § 25, p. 383. It reads:

". . . [T]he bailor is not responsible for damages resulting through the use of the article after the bailee had discovered its unsuitability for use, . . ."

The same principle is couched in somewhat different language in Prosser on Torts (3rd Ed.), Liability of Contracting Parties, § 98, p. 687, where the following appears:

". . . When the defect is disclosed to the one supplied, or is in fact discovered by him, the supplier usually is relieved of responsibility; . . ."

We believe the exception stated to be controlling in this case. A third person cannot stand in a better position with respect to liability of the bailor for defects than does the bailee (8 Am. Jur., 2d, Bailments, § 262, p. 1149).

Shehi examined the truck and the printing press on his arrival at the scene. He then discussed the unloading plan and obtained the equipment necessary in his judgment for the undertaking. By his own testimony he relieved Southwest of any responsibility.

On the record presented there remained no genuine issue as to any material fact. Therefore, the summary judgment was properly rendered as to each defendant.

The judgment is affirmed.