No. 45,194

MARIA GOFORTH, *Appellant*, v. FRANKLIN LIFE INSURANCE COMPANY, *Appellee*.

(449 P. 2d 477)

Opinion filed January 25, 1969.

*Kay McFarland,* of Topeka, argued the cause, and *T. M. Murrell, Jack A. Quinlan, George A. Scott* and *John A. Bell,* of Topeka, were with her on the brief for the appellant.

*Philip E. Buzick,* of Topeka, argued the cause, and *Robert L. Webb, Ralph W. Oman, William B. McElhenny, James D. Waugh, James L. Grimes, Jr., Donald J. Horttor, Terry L. Bullock* and *Edward L. Bailey,* of Topeka, were with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This action was brought by the widow of a United States Air Force officer to collect the proceeds of an insurance policy issued by the defendant on the life of her husband. Plaintiff predicated her right to recover on two alternative theories: (1) upon the policy as written, and (2) upon the policy as sought to be reformed. The trial court sustained separate motions for summary judgment in favor of the defendant on each theory, and plaintiff has appealed.

Two points are presented for our consideration. The first relates to the claim upon the policy as written and involves the question of whether or not the insured's death, under the circumstances alleged in the petition, was a risk excluded by the terms of an aviation exclusion rider attached to the policy. The second point has to do with the statute of limitations barring the claim for reformation of the policy on the ground of fraud. Because the two points involve different questions, they will be discussed separately.

The pertinent portions of the aviation exclusion rider are as follows:

"MILITARY EXCLUSION

"AVIATION EXCLUSION

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Death of the Insured occurring as a result of operating, riding in or descending from any kind of aircraft (1) operated for military or naval purposes, or (2) operated for any aviation training, or (3) of which the Insured is acting as a pilot or member of the crew, is a risk not assumed under said Policy.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The limitation of liability set forth above shall not apply if the death of the Insured occurs as a result of operating, riding in or descending from a licensed commercial aircraft provided by an incorporated commercial carrier on a scheduled air line service regularly offered over an established route."

The essential facts surrounding the insured's death are gathered from plaintiff's original petition filed June 29, 1966. Plaintiff's hus-

band, Oscar Goforth, was a navigator, serving in the United States Air Force. While stationed at Forbes Air Force Base on October 14, 1959, he purchased the life insurance policy, upon which recovery is sought, through the defendant's agent, a retired Air Force colonel, R. W. Rodieck. Plaintiff was named as the beneficiary in the policy. On July 1, 1960, a military aircraft upon which Lt. Goforth was serving as a navigator was fired upon by Russian aircraft over international waters of the Barents Sea. As a result of the damage inflicted on the plane, the crew bailed out, abandoning the aircraft. Two crew members were taken alive from the sea by a Russian ship, and the body of another was later recovered by the Russians. The bodies of Lt. Goforth and the two other crew members were never found. The temperature and weather conditions were such that it was impossible for a person to survive in the water for more than a few hours. Lt. Goforth was officially declared dead one year later (July 1, 1961). Plaintiff alleged her husband died as a result of conditions existing after his descent, and that the proximate cause of his death was exposure rather than any failure of the aircraft in which he was riding. She further alleged that the insured's death was not excluded by the aviation exclusion clause contained in the policy.

Defendant filed a motion to dismiss plaintiff's original petition as to both theories of recovery. Insofar as it related to her right to recover on the policy as written, defendant contended the aviation rider specifically excluded the insured's death and there was no coverage under the terms of the policy. The parties stipulated the policy should be considered by the trial court in ruling on the motion. A part of the court's memorandum opinion follows:

"Defendant's motion to dismiss for failure of the petition to state a claim upon which relief can be granted has been treated as a motion for summary judgment under K. S. A. 60-256 for the reason that matters outside the pleadings were presented and not excluded by the Court. Specifically, the Court considered the insurance policy.

". . . Assuming for the purpose of this motion that all the facts alleged in plaintiff's petition are true and considering said facts in the light most favorable to the plaintiff, the Court rules that the facts alleged in plaintiff's petition conclusively show, as a matter of law, that the insured's death occurred as a result of operating, riding in and descending from an aircraft operated for military purposes.

It would appear that plaintiff in her brief concedes that death by drowning or exposure after the forced landing of a land-based airplane in a body of water has been held by a number of courts to be within the terms of a variety of aviation exclusion clauses and hence not to be a risk assumed by the insurance company. (Citing cases.)

"However, plaintiff seeks to distinguish the instant case on the ground that the aircraft upon which the insured was riding was disabled by Russian gunfire making it necessary for all members of the crew including the insured to parachute from the aircraft. Enemy gunfire has been discussed in several cases. . . .

"The aviation provision in the instant case differs [from other cases] in that the risk relating to aircraft operated for military purposes is specifically excluded. The allegations of the petition clearly indicate that the insured was riding in an aircraft operated for military purposes. Certainly, a familiar and ordinary risk of operating military aircraft is the danger of being 'shot down' by unfriendly forces. The risk that a land-based military aircraft might be 'shot down' or forced down over water by gunfire of unfriendly forces is equally ordinary and familiar.

. . . . . . . . . . . . . .

"It is, therefore, the ruling of the Court that the facts as alleged in plaintiff's petition constitute a risk excluded by the terms of the aviation provision of the insurance policy and that the defendant is liable to the plaintiff only for the amounts due under the terms of said aviation provision. If the beneficiary has been previously paid said amounts, then no further liability exists on the part of the defendant."

Plaintiff first attacks the trial court's ruling on the basis the entry of summary judgment was premature because the case was not at issue, discovery had not been completed, and pretrial had not been conducted. We are unable to agree. At the time of the ruling the court had before it plaintiff's petition. As against a motion to dismiss, all well-pleaded facts in the petition were fully admitted. (*Parker v. City of Hutchinson,* 196 Kan. 148, 410 P. 2d 347.) The basis of plaintiff's claim was that the insured's death was not excluded by the aviation provision. The facts and circumstances of his death were fully alleged, and for the purposes of the motion, the cause of death was undisputed. By agreement, the policy, which had not been a part of plaintiff's petition, was also before the court for consideration. The posture of the proceedings at this point left merely a question of law for the court to determine, namely, whether or not the insured's death was a risk excluded by the terms of the rider. This involved interpretation of the policy in light of the undisputed facts. As a general rule, the construction and effect of a written contract of insurance is a matter of law to be determined by the court. If the facts are admitted, as they were here, then it is for the court to decide whether they come within the terms of the policy. (*St. Paul Mercury Ins. Co. v. Huitt,* 332 F. 2d 37 [6th Cir. 1964]; 1 Couch on Insurance 2d § 15.3.)

The stage of the proceedings does not necessarily determine the propriety of summary judgment being rendered. The criteria is whether or not at the particular stage at which summary judgment is sought it is shown conclusively that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Summary judgment guidelines have been discussed in numerous cases, including *Shehi v. Southwest Rentals, Inc.,* 199 Kan. 265, 428 P. 2d 838, *Bowen, Administrator v. Lewis,* 198 Kan. 605, 426 P. 2d 238, *Secrist v. Turley,* 196 Kan. 572, 412 P. 2d 976, *Brick v. City of Wichita,* 195 Kan. 206, 403 P. 2d 964, and need not again be repeated. Suffice it to say, summary judgment was not premature on the question of coverage under the terms of the policy in the instant case.

Before proceeding to the merits of the first point, we must be mindful of certain fundamental principles regarding the construction of insurance contracts.

The language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties. Where the terms of a policy of insurance are ambiguous or uncertain, conflicting or susceptible of more than one construction, the construction most favorable to the insured must prevail. Since the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage provided in the policy, it must use clear and unambiguous language in doing so; otherwise, the policy will be liberally construed in favor of the insured. If, however, the contract is clear and unambiguous, the words are to be taken and understood in their plain, ordinary and popular sense, and there is no need for judicial interpretation or the application of rules of liberal construction; the court's function is to enforce the contract according to its terms. (*Fowler v. United Equitable Ins. Co.,* 200 Kan. 632, 438 P. 2d 46, and numerous authorities therein cited. Also, see, *Knouse v. Equitable Life Ins. Co.,* 163 Kan. 213, 181 P. 2d 310.)

In her petition plaintiff alleged that her husband's death was the result of conditions after his descent into the sea and that the proximate cause of death was exposure in the water. As in the lower court, plaintiff in her brief concedes that numerous cases have held that death by exposure or drowning after the descent of a land-based aircraft is a hazard normally understood to attend aerial flight and is a risk clearly intended by the parties to be excluded under

various types of aviation exclusion clauses. Decisions supporting this proposition are *Order of United Commercial Travelers v. King*, 161 F. 2d 108 (4th Cir. 1947), affirmed 333 U. S. 153, 92 L. Ed. 608, 68 S. Ct. 488, rehearing denied 333 U. S. 878, 92 L. Ed 1153, 68 S. Ct. 900; *Hobbs v. Franklin Life Insurance Company*, 253 F. 2d 591 (5th Cir. 1958); *Rauch v. Underwriters at Lloyd's of London*, 320 F. 2d 525 (9th Cir. 1963); *Green v. Mutual Ben. Life Ins. Co.*, 144 F. 2d 55 (1st Cir. 1944); and *Neel v. Mutual Life Ins. Co. of New York*, 131 F. 2d 159 (2d Cir. 1942).

The rationale of the courts in denying recovery under such circumstances is illustrated in *Order of United Commercial Travelers v. King*, supra. There the insured was a flight observer with the Civil Air Patrol. The plane in which he was riding was a land-based plane which was forced down at sea because of engine trouble. The plane safely landed in the water and the insured managed to inflate his life jacket and free himself from the aircraft before it sank. The insured's body was later recovered, and death was determined to have been caused by drowning as a result of exposure in the water. The policy excluded coverage for "death resulting from participation, as a passenger or otherwise, in aviation or aeronautics." The court held the exclusion clause comprehended the very situation that developed. The reasoning of the court is expressed as follows:

". . . In undertaking an aerial flight over the ocean in a land-based plane, man must reckon with the perils of the sea which are as imminent and real as the unrelenting force of gravity. Just as flight over the land brings forth the danger of violent collision with the earth, we have the dangers of the sea in overwater flight. That men may remain alive for varying periods of time before succumbing does not change the picture. We think it a rather violent fiction to say that death, under such circumstances, comes from accidental drowning. Common knowledge and experience fairly shout of the dangers of shock, exposure and drowning when a flight is taken over water in the winter time in a land-based plane." (p. 109.)

Likewise, in *Green v. Mutual Ben. Life Ins. Co.*, supra, the policy excluded death occurring by reason of any aerial flight. It was held there could be no recovery on the policy where the insured, while in training as a naval aviation cadet, lost his life when, unable to land upon a carrier because of a sudden snow storm, he was forced to land in the water, the court saying:

"The natural and obvious meaning of the aviation clause in the case at bar is that the insurer declines to assume those extra risks of death ordinarily associated with aerial flight. Where death admittedly results from the opera-

tion of one of those familiar and popularly understood risks there cannot be any issue of proximate causation for a jury to determine. . . ." (p. 57.)

In all of the above-cited cases it was recognized that the risk of death by drowning or exposure was inherent in the flying of a land-based plane over water. The attendant risk of an insured losing his life in the water as the result of engine trouble or adverse weather conditions was a normal, anticipated risk clearly contemplated by the terms of the aviation exclusion clauses.

The aviation activity must in some way be regarded as a proximate cause of the harm sustained in order to bring the harm within an aviation exception. In this sense, however, proximate cause is often said to refer to risks the parties contempleted and intended to include or exclude from coverage. Judge Cardozo, in *Bird v. St. Paul F. & M. Ins. Co.*, 224 N. Y. 47, 120 N. E. 86, 13 A. L. R. 875, said:

"General definitions of a proximate cause give little aid. Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract. It is his intention, expressed or fairly to be inferred, that counts . . . The same cause producing the same effect may be proximate or remote as the contract of the parties seems to place it in light or shadow. That cause is to be held predominant which they would think of as predominant. A common-sense appraisement of everyday forms of speech and modes of thought must tell us when to stop. It is an act of 'judgment as upon a matter of fact'. . . ." (p. 51.)

Also, see, *Order of United Commercial Travelers v. King*, supra, where the court chose to attach to the word "resulting" the ordinary meaning given it by laymen rather than any technical or legal connotation borrowed from the law of torts pertaining to causation.

Plaintiff looks to other portions of her petition and urges the instant case is distinguishable from the foregoing cases in that her husband's death occurred as a result of an outside or intervening cause, namely, Russian gunfire, and was not an excluded risk under the clause in question. She relies principally on *Boye v. United Services Life Ins. Co.*, 168 F 2d 570 (D. C. Cir. 1948), cert. denied 335 U. S. 828, 93 L. Ed. 381 69 S. Ct. 54, *Bull v. Sun Life Assur. Co.*, 141 F. 2d 456 (7th Cir. 1944), cert. denied 323 U. S. 723, 89 L. Ed. 581, 65 S. Ct. 55, and *Riche v. Metropolitan Life Ins. Co.*, 84 N. Y. S. 2d 832, holding generally that death of an insured resulting from a hostile third party is not excluded by an aviation clause, since such was a risk of war rather than a risk of aviation. Plaintiff also directs our attention to statements in *Barringer v. Prudential Ins. Co.*, 62 F. Supp. 286 (D. C. Pa.), affirmed 153 F. 2d

224 (3d Cir. 1945), and *Massachusetts Mut. Life Ins. Co. v. Smith,* 193 F. 2d 511 (5th Cir. 1952), rehearing denied 194 F. 2d 1006, cert. denied 344 U. S. 823, 97 L. Ed. 641, 73 S. Ct. 22, which tend to support her argument.

In *Boye v. United Services Life Ins. Co.,* supra, the insured was a bomber pilot who failed to return from a mission on which his plane was believed to have been lost as a result of enemy anti-aircraft fire. The court held death was not due to "operating or riding in any kind of aircraft" within the aviation exclusion clause of the policy, but was the result of gunfire, which was a risk of war not excluded by the policy. The court likened the situation to that where a policy excluded death "due to operating or riding in an automobile" and the insured had been killed by gunfire while driving an army car.

Likewise in *Bull v. Sun Life Assur. Co.,* supra, the policy excluded death "as a result, directly or indirectly, of service, travel or flight in any species of aircraft." The insured's seaplane, after being damaged by enemy fire, made a forced landing in the water. While the insured was attempting to launch a life raft, a Japanese seaplane strafed the crippled aircraft. The plane blew up and insured was never seen again. The court concluded the intention of the parties was to exclude only the risks of aviation and to assume war risks not connected with aviation. The court held the flight was completed when the plane landed, and death was due solely to a risk of war, not of aviation. Therefore, recovery was allowed on the policy. There was a strong dissent pointing out that death was at least the indirect result of an airplane flight.

Also, in *Riche v. Metropolitan Life Ins. Co.,* supra, recovery was permitted under an identical exclusion clause as found in the *Bull* case. The insured was killed during World War II when his plane was struck by enemy fire. The court said:

"As pointed out above, the defendant apparently did not concern itself with the exclusion of war risks at the time the policy was issued, even though it must have been apparent at that time that such risks might well materialize. Defendant did seek to exclude certain aviation risks. The risks it intended to exclude would seem logically to be only the risks ordinarily attendant upon flight, and not special war risks which it could have but did not choose to exclude. . . . Assured's death was not the result of any event proceeding out of the flight of the airplane. Assured died from enemy fire just as certainly as though he had been an infantryman occupying a foxhole in the front lines. Death was the result of a deliberate act of a third

person, and was not connected in any way with any risk ordinarily associated with aerial flight.

. . . . . . . . . . . .

"This Court concludes that the death of the insured, Wilson A. Riche, was the direct result of an act of war or of violence on the part of a third person or third persons and that his death was not the result, directly or indirectly, of travel or flight in any species of air craft." (pp. 835, 837.)

A review of the cases upon which plaintiff relies discloses the aviation exclusion clauses differ greatly from the clause in the policy here. At least on this basis we think the cases are readily distinguishable and are not controlling.

Clauses which seek to except or limit the liability of an insurer where death or injury of the insured is the result of his connection with aviation or aeronautics take many forms. (Annos. 155 A. L. R. 1026, 17 A. L. R. 2d 1041, 36 A. L. R. 2d 1018.) It would appear the particular language of the clause in question is unusual. Our limited research discloses the identical clause was before an appellate court in *Tennefos v. Guarantee Mutual Life Company*, 136 N. W. 2d 155 (N. D. 1965), but the case turned on a portion of the clause not directly involved here.

Although the policy contains no so-called war risk exclusion, the aviation clause, by its first subsection, specifically excludes death occurring as a result of operating, riding in or descending from any kind of aircraft operated for *military* or naval purposes. The caption of the rider containing the words "Military Exclusion" may properly be read and construed with the language of the rider itself. (*Coit v. Jefferson Standard Life Ins. Co.*, 28 Cal. 2d 1, 168 P. 2d 163, 168 A. L. R. 673.) Both refer specifically to "military." The word must have been used for a purpose. Undoubtedly, the risks reasonably to be anticipated and incident to aircraft operated for military purposes are greater than those arising from the operation of civilian aircraft. We believe the reference to any kind of aircraft operated for military purposes includes the very risk involved here. In other words, the disablement of Lt. Goforth's plane by gunfire of unfriendly aircraft which immediately led to his death after his descent may reasonably be said to be a risk contemplated by the parties and intended by them to be excluded by the clause in the present policy.

Under the world situation as it existed at the time of the issuance of the policy, and as it continues to exist, the cold war between the United States and Soviet Russia is a fact of reality marked with

grave implications arising from incidents involving the military and naval forces of this country. Aerial reconnaissance missions by military aircraft are not unusual, and attendant with such operations is the risk of being "shot down" or "forced down" by unfriendly forces. We believe the specific wording of the first subsection of the aviation provision here represents a conscious effort on the part of the insurance company to cope with the volatile world conditions of this era and exclude the risk of an insured being killed as the result of a military aircraft being shot down by the aggressive act of an unfriendly power. The risk of death under such conditions is one that we consider neither unusual nor unanticipated in relation to aircraft operated for military purposes.

In answer to plaintiff's argument that the absence of a specific war risk exclusion compels a different conclusion, we need only point to two of our own cases.

In *Knouse v. Equitable Life Ins. Co.*, supra, the insured was a gunner on an Army bomber returning from a mission when the plane ran out of gas. The insured bailed out and was killed in the jump. The policy contained a clause excluding death "as a result, directly or indirectly, of service, travel or flight in any species of aircraft." There was no provision regarding military service. The contention was made that the absence of a specific military service provision combined with the insured's answers to questions in the application for insurance rendered the exclusion clause ambiguous and called for its application only to civilian aviation. In a comprehensive opinion by Justice Thiele the court reviewed many decisions, including *Green v. Mutual Ben. Life Ins. Co.*, supra, and *Bull v. Sun Life Assur. Co.*, supra, and held:

"It may not be doubted that the insurer prepared the contract and if it did not make its meaning clear, it must suffer. It is to be remembered that the company, however, could determine what risks it would cover by the policy it issued. It was at liberty to assume war risks and aviation risks as it chose. On the basis of the above answers, it did not attach a war clause but it did attach the aviation provision. Did the fact the company did not attach a war clause make the aviation provision ambiguous? We think not. As has been noted in some of the cases reviewed above, it is fallacious reasoning to say that because a policy fails to exclude war risks, the scope of the contract which clearly excluded certain deaths in aerial flights, is, because of such failure, to be construed to cover all war risks and so to cover deaths in aerial flights of the excluded kind. [Citing cases.] The language in the aviation provision stating that death as a result of flight

'in any species of aircraft' except as a passenger under stated circumstances 'is a risk not assumed,' is clear and is not ambiguous because there was no war risk clause attached to the policy.

"Neither may it be said that the clause refers only to civilian flights and not to military flights. Its language refers to flight 'in any species of aircraft,' about as all-inclusive language as could be used. We are not warranted in reading into this plain language, any words that would modify that language and make it say something other than was said. As was said at an earlier part of this opinion, where a contract is not ambiguous this court may not make another contract for the parties; our function is to enforce the contract as made. [Citing cases]." (pp. 223-224.)

More analogous factually to the instant case is *McKanna v. Continental Assurance Co.*, 165 Kan. 289, 194 P. 2d 515, where the insured was a bomber pilot flying a mission over Italy when his plane was hit by enemy antiaircraft fire and exploded in the air. There were no survivors. The aviation clause limited the company's obligation to payment of the reserves under the policy "Should the death . . . result from bodily injuries sustained while in or on, or in consequence of having been in or on any device for aerial navigation. . . ." The decision dealt with the propriety of the trial court's overruling plaintiff's demurrer to defendant's answer. In affirming the lower court, we observed there was no difference between the meaning of this clause and the one contained in the policy in the *Knouse* case. Furthermore, it was held the clause was not ambiguous.

Despite the fact that the exclusion clauses in both cases made no specific reference to "military aircraft" such as in the case here, the phrases "in any species of aircraft" and "any device for aerial navigation" were said to apply to risks attending military flights. Further, in *McKanna* no attempt was made to distinguish a situation where death resulted from enemy gunfire.

The language in the aviation provision excluding death "occurring as a result of operating, riding in or descending from any kind of aircraft operated for military or naval purposes" is clear and unambiguous. Consequently, the court's function is to enforce the provision according to its terms. We hold that Lt. Goforth's death was a risk not assumed by the insurer under the terms of the policy, and that the trial court properly rendered summary judgment for the defendant.

We turn now to plaintiff's second point that the lower court erred in holding her claim for reformation of the policy on the ground of

fraud was barred by the statute of limitations. We note that in ruling on defendant's motion to dismiss plaintiff's original petition in respect to reformation of the policy, the district court held she stated a claim for relief on the basis of mutual mistake of fact. After several procedural problems not now important, plaintiff filed a second amended petition basing her claim for reformation solely on fraud.

Plaintiff alleged that sometime prior to purchasing the policy she and her husband reviewed and discussed the life insurance policies already in force on his life. Concluding that none of the policies covered Lt. Goforth when he was engaged in his regular occupation, the couple agreed to secure additional life insurance which would provide coverage while he was flying. They consulted Col. Rodieck and expressly told him they wanted insurance which would cover the lieutenant when he was engaged in his occupation as a navigator in the Air Force. Col. Rodieck assured the Goforths he would secure from the defendant company an insurance policy which would meet their specific needs. Relying on the colonel's statements, Lt. Goforth signed an insurance application prepared by the colonel. When the policy was purchased, the Goforths assumed it provided the coverage they had specifically requested. Plaintiff further alleged the facts and circumstances surrounding her husband's death which were narrated earlier in this opinion. Additionally, she alleged that after Lt. Goforth was officially declared dead, officials of the insurance company visited her and paid her a relatively small sum, and advised her the sum was only a refund of premiums because her husband's death was not covered by the policy. Finally, she alleged that the insertion of the aviation exclusion clause was contrary to the intention of the parties, and because of the fraud on the part of defendant's agent, she was entitled to reformation of the policy and recovery of the full amount thereof.

Following the filing of plaintiff's second amended petition, defendant took her deposition, wherein many of the factual statements set out in her petition were again repeated. Additionally, her deposition testimony disclosed that shortly after she received word on July 1, 1960, that her husband's plane had been shot down, Col. Rodieck, who was no longer an agent for the defendant insurance company, contacted her and told her she would be receiving three checks, including one for the face amount of the policy. Approximately one year later, in July or August 1961, after her

husband had been officially declared dead, a Mr. Belden, an agent of the insurance company, called on plaintiff and informed her the policy provided no coverage for her husband while flying in a military aircraft. He tendered her a check for premiums paid, which she refused. After Mr. Belden departed, plaintiff read the policy for the first time and discovered the exclusionary clause. Several days later she contacted an attorney by the name of Mr. Probasco. Within a few weeks after her conference with Mr. Belden, and still in 1961, plaintiff decided to accept the check for refund of premiums in lieu of pursuing the matter further. She so informed Mr. Belden and told him she was tired of "fighting." Thereupon, she surrendered the policy and accepted the check for return of premiums. She decided to do nothing more about collecting the proceeds of the policy.

Plaintiff eventually contacted Mr. Tim Murrell, a Topeka attorney, sometime during the early part of 1962. She conceded it was her fault that nothing was done until the present action was filed, and stated that her reason for delaying action on the matter was because she wanted no publicity.

After plaintiff's deposition had been filed, defendant filed its answer admitting the facts surrounding Lt. Goforth's death, denying any fraud on its part or that of its agents, and affirmatively alleging the defenses of statute of limitations, laches and accord and satisfaction. On the same date defendant filed its motion for summary judgment, asserting that the pleadings and admissions of plaintiff in her deposition established as a matter of law that her claim based on fraud was barred by the statute.

Five days later plaintiff served written interrogatories upon the defendant. The time for answering these interrogatories was periodically extended by orders of the district court until disposition of defendant's motion for summary judgment. Pending ruling on the motion, plaintiff filed no affidavit or other documents for the court's consideration. The trial court sustained the motion and entered summary judgment for the defendant upon the ground that plaintiff's claim for reformation was barred by the statute of limitations.

As before, plaintiff complains of the trial court's ruling on the basis the entry of summary judgment was premature, principally because discovery had not been completed and there were material facts in dispute. She specifically points to the fact that her interrogatories were never required by the court to be answered by defendant.

When the court ruled on the motion for summary judgment it had before it plaintiff's second amended petition, defendant's answer and plaintiff's deposition. In view of plaintiff's admissions in her discovery deposition bearing directly on the limitations question, we think summary judgment was proper. At the taking of her deposition her counsel engaged in no cross-examination. Plaintiff made no objection to any part of her deposition; in fact, she submitted nothing for the trial court's consideration in opposition to the motion or to alter the effect of her admissions. (See, *Wilson v. Deer,* 197 Kan. 171, 415 P. 2d 289.) It is true there were disputed factual issues raised by the pleadings, but they related to the merits rather than to the statute of limitations. A disputed question of fact which is immaterial to the controlling issue does not preclude summary judgment. (*Shehi v. Southwest Rentals, Inc.,* supra; *Secrist v. Turley,* supra.)

A similar argument to that here was advanced in *Bowen, Administrator v. Lewis,* supra, where summary judgment was entered on the basis that there were no genuine issues of material fact raised by the petition and answer relating to the statute of limitations. There, we said:

"The appellant first suggests that discovery was incomplete when the motion for summary judgment was considered and that the record clearly reflects material issues of fact. It may be said that appellant's position would be correct if the case were to be tried on the merits. However, such matters did not reflect on the question of the statute of limitations. If the case was to be determined by the statute of limitations the factual issues to which reference is made were immaterial. Although summary judgment should not be rendered if there remains a genuine issue of fact (citing cases), the fact is not genuine unless it has legal probative force as to a controlling issue. In *City of Ulysses v. Neidert,* 196 Kan. 169, 409 P. 2d 800, we held:

" 'Where a defending party pleads a statute of limitations and moves for summary judgment, and it appears that the action is barred by the appropriate statute of limitations and there is no genuine issue as to any material fact in connection with such statute, or such motion, then the motion for summary judgment should be granted.' (Syl. 3.)" (p. 608.)

In regard to the interrogatories submitted, plaintiff urges that had defendant been required to answer them, they may have revealed something on which she could rely to have tolled the statute. We are unable to agree, for the simple reason the interrogatories, for the most part, called for answers pertaining to the merits of the fraud claim. While there were several interrogatories where the substance of the answers called for might possibly have revealed contacts or communications between plaintiff and defendant after

her discovery of the alleged fraud, this remote possibility was foreclosed by plaintiff's own admissions in her deposition. She had testified that at the time of her last conference in 1961 with Mr. Belden she knew of the alleged fraud but, nevertheless, accepted the refund of premiums; that Mr. Belden gave her no assurances she would receive anything more; and that from and after that date she did not see anyone else from the insurance company, nor did she receive any communication from the company.

From these admissions it is beyond dispute plaintiff knew in 1961 that the policy was not the one she and her husband had intended to purchase. At that time she had fully discovered the alleged fraud. (*City of Ulysses v. Neidert*, supra; *Hartman v. Stumbo*, 195 Kan. 634, 408 P. 2d 693.) Despite her discovery, plaintiff's original petition was not filed until June 29, 1966—long after the two-year statute of limitations had expired.

K. S. A. [now K. S. A. 1968 Supp.] 60-513 provides in part:

"The following actions shall be brought within two (2) years:

. . . . . . . . . . . . . .

"(3) An action for relief on the ground of fraud, but the cause of action shall not be deemed to have accrued until the fraud is discovered."

The limitation imposed by the foregoing statute applies to equitable proceedings founded on fraud, including actions for reformation. (*Cooksey v. Jones*, 184 Kan. 300, 336 P. 2d 422 [rescission]; *Brown v. Wolberg*, 181 Kan. 919, 317 P. 2d 444 [rescission]; *Woodworth v. Kendall*, 172 Kan. 332, 239 P. 2d 924 [reformation]; *Collins v. Richardson*, 168 Kan. 203, 212 P. 2d 302 [reformation].)

From what has been said, it follows that the trial court properly rendered summary judgment in favor of defendant on plaintiff's claim for reformation on the ground of fraud.

Other contentions advanced by plaintiff do not warrant discussion. They have been examined and found to be without merit.

The judgment is affirmed.