Herman M. WOLF, Plaintiff-Appellant,

v.

PREFERRED RISK LIFE INSURANCE
CO., Defendant-Appellee.

No. 81–2198.

United States Court of Appeals,
Tenth Circuit.

March 9, 1984.

Ronald D. DeMoss, Williamson & Stalcup, Chartered, Wichita, Kan. (Walter C. Williamson, Williamson & Stalcup, Chartered, Wichita, Kan., with him on brief), for plaintiff-appellant.

R.K. Hollingsworth, Wichita, Kan., for defendant-appellee.

Before McWILLIAMS and DOYLE, Circuit Judges, and CHILSON, District Judge.*

WILLIAM E. DOYLE, Circuit Judge.

Plaintiff-appellant, Mr. Wolf, brought this diversity action in the United States District Court for the District of Kansas. He sought reformation of a Keogh plan contract that was written by the Preferred Risk Life Insurance Co., or in the alternative, damages arising out of misrepresentations by the company's agent in the sale of the plan. It is the contention of the plaintiff that the contract delivered did not conform to the agent's representations, and that plaintiff had the right to recover the value of the retirement plan as the same was represented by the agent.

The defendant moved for summary judgment on the ground that the plaintiff's action was barred by the applicable statute of limitations. Kan.Stat.Ann. § 60–513(a)(3). After reciting the facts of the case at length, the trial judge found that the statute of limitations had run, and granted the defendant's motion for summary judgment. Plaintiff Wolf appeals from this determination.

The insurance company had an agent in Wellington, Kansas who sold the policy in question to Herman Wolf, the plaintiff. Mr. Wolf is a farmer who apparently lives close to South Haven, Kansas, because that is the place of his rural box. Essentially the plaintiff maintains that the contract delivered was contrary to that which had been represented to him.

This policy of insurance, which was supposed to be a deferred annuity policy, was sold in late December 1973, following discussions with the Company's agent. The plaintiff received a copy of the policy in early 1974. Wolf claims that the agent told him that the policy had a guaranteed minimum interest rate of 5% with higher rates likely, and that all payments of principal were to go directly into his account, without deductions for commission or administrative costs. The policy, however, actually provided for a minimum interest rate of 3.5%, and the sums paid in were not inviolate. Under the policy, only 58% of the first year's premium goes into the annuity's cash value, and the maximum proportion of premium going to cash value, 97%, is not realized until the eighth year of the policy. The trial judge found that a lay person could not be held to understand the contract as written.

It would appear from the facts that have been brought to our attention that the amount that found its way into the policy was considerably less than the amount that was paid in. Also there was misrepresentation regarding the amount of the interest.

In July 1975 Wolf wrote to the defendant Insurance Company, outlining the agent's representations and complaining that the Insurance Company's July 1975 announcement that interest rates had increased from 3.5% to 5.5% did not agree with the agent's statements. Soon thereafter Wolf received a responding letter in which the Insurance Company stated that it had "placed $6,714.57, the cash value of the policy, on deposit at the annual interest rate provided in the policy." Wolf apparently recognized the discrepancy between the $10,000 he had

* Of the United States District Court for the District of Colorado sitting by designation.

paid in and the cash value with which he had been credited, and he contacted the local agent, who said that he would take care of the problem.

Wolf made no further inquiry or complaint until April 1977 at which time he contacted the agent's successor. The successor wrote to the company on Wolf's behalf, and Wolf received a letter back stating that the cash value of his plan was $7,379.30. Wolf then contacted an attorney, who wrote to the Insurance Company on May 19, 1977 regarding the discrepancies between the original agent's representations and the contract terms. There was some correspondence back and forth and on July 1, 1977, the Company acknowledged the agent's misrepresentations and denied any liability for those representations. On May 31, 1979, plaintiff's current attorneys filed the instant action.

The question presented on this appeal is whether the trial judge properly granted the defendant company's motion for summary judgment on the ground that plaintiff's action was untimely.

Kan.Stat.Ann. § 60–513(a)(3) provides:
The following actions shall be brought within two (2) years:
(3) An action for relief on the ground of fraud, but the cause of action shall not be deemed to have accrued until the fraud is discovered.

Although the statute is phrased in terms of actual discovery, the rule in Kansas has been that the two year limitations period begins to run when the fraud could reasonably have been discovered:
[T]he phrase 'discovery of the fraud,' which would start the statute of limitations to running, means the discovery by the person defrauded of such facts indicating he had been defrauded as would cause a reasonably prudent person to investigate, and which, if investigated with reasonable diligence, would lead to knowledge of the fraud.
*Wolf v. Brungardt,* 215 Kan. 272, 281–82, 524 P.2d 726, 734 (1974). The Kansas courts have also recognized that the "modern tendency is to restrict rather than extend

the immunity of one who gains an advantage over another by purposely misleading him." *Wolf,* 524 P.2d at 734. Some Kansas cases have rejected statute of limitations contentions when the plaintiff could have discovered the fraud, but the defendant lulled the plaintiff into confidence that nothing was amiss. *Dreiling v. Home State Life Ins. Co.,* 213 Kan. 137, 515 P.2d 757 (1973); *Stegman v. Professional & Business Men's Life Ins. Co.,* 173 Kan. 744, 252 P.2d 1074 (1953).

*Dreiling supra,* held that the company was bound by misrepresentations made by an insurance agent which were designed to pursuade the purchaser of the insurance that the insurance company approved of promised provisions not appearing in the contract. *Dreiling* held that the owner of life insurance policies was not estopped from asserting fraud in a suit to rescind the contracts by the fact that he retained the policy for some two years with knowledge that promised investments provisions were not contained expressly therein. The explanation given by the agent in *Dreiling* convinced the owner that the provisions were nonetheless part of the policy. After he had received a disputed premium notice, which caused him to become aware that the representations as to the investment provisions were false, and filed suit within two months thereafter, the action was timely.

■ In Kansas, as well as in the federal courts, cases involving defenses hinging on applicable statutes of limitations may lend themselves to summary judgment. Nonetheless, the cases firmly hold that if the statute of limitations depends on disputed facts, then summary judgment is inappropriate. *Goforth v. Franklin,* 202 Kan. 413, 449 P.2d 477, 487 (1969) ("here a defending party pleads a statute of limitations and moves for summary judgment, and it is apparent that the action is barred by the appropriate statute of limitations and there is no genuine issue as to any material fact in connection with such statute, or such motion, then the motion for summary judgment should be granted"); *State of Ohio v. Peterson,* 585 F.2d 454, 457 (10th Cir.1978)

("a trial court should not grant summary judgment for a defendant if there is a 'viable issue of fact' as to when the limitations period began").

Whether the limitations period here at issue ran depends on the factfinder's view of the facts. Wolf contends that he received repeated assurances from his insurance agent that apparent disparities between his purported contract and the company's actions would be corrected. Wolf claims that even when his agent finally acknowledged the disparity, Wolf did not know that the company would disavow the agent's representations. According to Wolf, he only had notice of a possible fraud when he received the June 1, 1977 letter from the company, denying liability for its agent's representations. The Company claims that Wolf had notice many years before this action that the agent's misrepresentation did not match the company's performance. The company claims this disparity put him on notice of possible fraud, and should have led a reasonable person to investigate.

In a review of the district court's order of summary judgment, the plaintiff has a right to have the facts and the reasonable inferences therefrom analyzed in the light most favorable to the plaintiff. *Exnicious v. United States,* 563 F.2d 418 (10th Cir. 1977). So viewed, there appear to be material facts in dispute, the resolution of which are critical to the issue before this court. Questions of when a reasonable person would discover an injury and what a reasonable person would have done are generally within the province of the jury. *See Briskin v. Ernst & Ernst,* 589 F.2d 1363, 1369 (9th Cir.1978) ("the conflicting assertions ... about what a reasonable investor would have known presented issues of the type usually reserved for juries" and summary judgment was inappropriate). In the face of conflicting evidence on the issues of Wolf's knowledge and the reasonable response thereto, the issues ought to have gone to the jury. Summary judgment was thus inappropriate in this case.

Accordingly, the decision of the district court must be reversed and the cause must be remanded for proceedings consistent with this opinion. The importance of this case demands a full factual hearing on the question of when the statute of limitations commenced to run.