No. 58,561

THELMA L. PHILLIPS, *Appellee/Cross-Appellant*, v. DAVID W. CAR-SON, *et al.*, *Appellants/Cross-Appellees.*

(731 P.2d 820)

Opinion filed January 16, 1987.

*John Anderson, Jr.*, of Anderson Law Offices, of Overland Park, argued the cause and was on the brief for appellant David W. Carson.

*Robert G. Herndon*, of McDowell, Rice & Smith, Chartered, of Kansas City, argued the cause, and *Mark S. Gunnison*, of the same firm, was with him on the briefs for appellee/cross-appellant Thelma L. Phillips.

*Michael L. Sexton*, of Callen, Sexton & Shelor, of Kansas City, argued the cause, and *Mark J. Sachse*, of Kansas City, was with him on the brief for cross-appellees David W. Boal and Gerald N. Jeserich.

*Scott I. Asner*, of Olathe, argued the cause pro se and joined in the brief for cross-appellees David W. Boal and Gerald N. Jeserich.

*John H. Fields*, of Carson & Fields, of Kansas City, argued the cause and was on the brief for cross-appellees Carson, Fields, Boal, Jeserich & Asner, and John H. Fields individually.

The opinion of the court was delivered by

MILLER, J: This is an action for professional negligence filed by Mrs. Thelma L. Phillips against an attorney, David W. Carson; the individual partners of his law firm; and the partnership Carson, Fields, Boal, Jeserich & Asner, a Kansas professional partnership. The lawsuit is based upon Carson's allegedly negligent handling of legal duties associated with personal loans which he acquired from Mrs. Phillips. Judge Lewis C. Smith, of the Johnson County District Court, entered summary judgment for plaintiff and against defendant Carson, finding that he was negligent in his actions as plaintiff's attorney. The judge also sustained motions for summary judgment filed by the other individual partners of the law firm, and by the partnership, finding that Carson's partners and his law firm were not vicariously liable because Carson's actions were not within the scope of his authority and were not engaged in to carry on the partnership business. Carson appeals from the summary judgment entered against him. His principal claim of error is that the trial court erred in entering summary judgment on the issue of negligence. Mrs. Phillips cross-appeals from the order of sum-

mary judgment entered against her claims against the other partners of the law firm and the partnership. Her principal claim of error is that the trial court erred in finding that the partners and the firm were not vicariously liable and in finding that Carson was not acting within the ordinary course of business of the partnership or with the authority of his partners at the time of the transaction in question.

Mrs. Phillips and her husband, Robert L. Phillips, and Mr. and Mrs. Carson had been friends for several years prior to Mr. Phillips' death in 1978. Mrs. Phillips retained Carson and his law firm to handle the estate of her deceased husband. The probate proceedings commenced in 1978, and the estate had not been closed in May of 1982 when Mrs. Phillips secured other counsel.

While the estate was pending, Mrs. Phillips paid fees totaling $80,000 to the firm. Carson told her that this fee was to take care of all of her legal business until the estate was closed. Mr. Asner prepared Mrs. Phillips' individual tax return for at least 1980 through 1982. Carson represented Mrs. Phillips in a conflict she was having with a builder, handled negotiations for her relating to a sulphur lease in Pecos County, Texas, and when Mrs. Phillips inappropriately loaned her niece money from the estate, Carson made the necessary arrangements to have the money returned to the estate. The firm did not bill Mrs. Phillips for any of this additional work, which was performed for her personally. Apparently John Anderson, Jr. handled some of the legal work for Mrs. Phillips and shared in the fees, but that is not material to the issues here.

In August 1980, Carson told Mrs. Phillips that he was having financial problems, and Mrs. Phillips loaned him $200,000. Carson told her that she would be fully secured, and he gave her a note and a second mortgage on some Arizona property. These documents were properly executed and the mortgage was filed of record. In 1981, Phillips loaned Carson an additional $70,000. Because of his representations, she believed that this loan would get him over his current financial difficulties. She was concerned that he might harm himself, and she thought this loan would increase the chances that her first loan would be repaid. Later, Carson asked Mrs. Phillips to release her mortgage on the Arizona property so that he could refinance and sell that or another property. He offered her a mortgage on 90 acres he owned in

Wyandotte County, and told Mrs. Phillips that this would put her in a better position. She relied upon Carson's statement that she would be better secured and she trusted his advice as her attorney. On March 29, 1982, Mrs. Phillips released her mortgage on the Arizona property, and Carson gave her a new promissory note for $274,933.70, which included past due interest as principal. Carson also prepared and executed a mortgage on the Wyandotte County property to Mrs. Phillips, but he failed to file that mortgage with the Register of Deeds.

Carson at no time advised Mrs. Phillips to seek independent counsel regarding the loan transactions, and she did not discuss them with other partners of the Carson firm or with other counsel. In May 1982, Mrs. Phillips called Carson's office and learned that her mortgage had not been filed of record. She sought independent counsel, who secured the mortgage and filed it for record on July 23, 1982. Mrs. Phillips then demanded payment in full from Carson; it was not forthcoming. On September 10, 1982, Carson filed a Chapter 11 petition in the United States Bankruptcy Court. In an order filed on February 24, 1984, the bankruptcy court granted Mrs. Phillips relief from the automatic stay to pursue her claim against Carson and the partnership in an appropriate court. The bankruptcy court reserved the exclusive jurisdiction to determine the dischargeability of any portion of any resulting personal judgment against Carson not satisfied by insurance proceeds or other persons. This order was affirmed by United States District Judge Dale E. Saffels on October 10, 1984. Judge Saffels noted that the claim being asserted by Mrs. Phillips was "based on allegations of legal malpractice and breach of fiduciary duty."

The bankruptcy court also entered an order avoiding Phillips' mortgage on the Wyandotte County land as a preferential transfer pursuant to 11 U.S.C. § 547(b) (1982), rendering it an unsecured claim. Carson appealed that decision and on June 26, 1985, Chief Judge Earl E. O'Connor of the United States District Court vacated the bankruptcy court's order and remanded for further proceedings because Carson had not been given notice and an opportunity to appear at the preferential transfer avoidance hearing in the bankruptcy court. The bankruptcy court, on September 22, 1986, dismissed the trustee's complaint to avoid the transfer as a preference because the real estate had been

transferred and was no longer property of the bankrupt estate, rendering the preference issue moot.

By her petition filed in this action, plaintiff claims that Carson, while acting as attorney for her and within the scope and course of the law partnership business and authority, and while acting in a fiduciary relationship towards her, negligently performed or failed to perform those legal duties entrusted to him to be performed on behalf of the plaintiff, listing some six allegedly negligent acts or omissions. These include negligently advising or failing to advise her of the legal nature, extent, and effect of the mortgage she was to receive, of the effect of her releasing the mortgage on the Arizona property, and of the extent of the superior liens on the Wyandotte County land; failing to timely draft the note and mortgage; failing to record the mortgage and perfect plaintiff's security interest; failing to fully advise her of the effect upon her of his financial consolidation; and filing his Chapter 11 petition which, under the circumstances, left her totally unsecured. She contends that a fiduciary relationship existed between Carson, the individual partners of the firm, the partnership, and the plaintiff. She seeks actual damages of $274,933.70 plus accruing interest and costs.

All defendants filed answers. Extensive depositions of all of the principal parties were taken, interrogatories were served and answered, documents were disclosed, and discovery was completed. Each of the defendants filed separate motions for summary judgment. That filed by David W. Carson was combined with a confession of judgment, wherein Carson entered a "confession of judgment for the unpaid amount of principal on the note held by plaintiff and for the proper accrued interest thereon subject to the Order of the . . . Bankruptcy Court . . . which retained . . . the exclusive jurisdiction to determine the dischargeability of such debt. Said confession of judgment is made on the note and shall not be considered a confession of judgment on the general pleadings or allegation of negligence."

These motions were accompanied by suggestions in support thereof and by statements of uncontroverted fact. Plaintiff responded and opposed the motions. The trial court heard oral argument on May 9, 1985, and on May 29, 1985, filed its Memorandum Decision entering judgment in favor of plaintiff and against David W. Carson for "breach of duty in the negligent

performance of legal services and advice" in the total sum of $378,107.45 plus interest from May 9, 1985, at the statutory rate. The trial court also entered judgment in favor of the partnership, Carson, Fields, Boal, Jeserich & Asner, and the partners individually (except Carson), finding that those defendants were not vicariously liable to the plaintiff for the breach of duty and negligence of defendant Carson.

On July 19, 1985, the trial court filed its Modified Memorandum Decision, which is the order from which this appeal is taken. It entered judgment as set forth above. The trial court made extensive findings of fact and conclusions of law, which are as follows:

"Thereupon the Court . . . makes the following findings of fact relative to the defendants' motions for summary judgment and/or for dismissal.

"1. The law partnership of Carson, Fields, Boal, Jeserich & Asner had no partnership agreement and no documents were created which set forth the terms and conditions of the working arrangements between the parties except for possible documentation which may have dealt with what would happen in the event any partner left the partnership.

"2. All partners were given full power of authority to contract to perform legal services on behalf of a client and to set the fee arrangement, if any, was to be made as the result of work performed.

"3. There were generally no set procedures established with the firm of Carson, Fields, Boal, Jeserich & Asner by which the work of one partner would be reviewed in any way by another partner or partners of the law firm.

"4. There were no rules, guidelines, or policies laid down within the partnership of Carson, Fields, Boal, Jeserich & Asner which governed the conduct of the attorneys who were partners relating to the performance of legal work on behalf of clients, even after payments had been received. The partners relied on each other's integrity, common sense, ability and initiative to a considerable degree.

"5. The only restriction placed on the partners of the firm of Carson, Fields, Boal, Jeserich & Asner as to what clients they may accept and provide advice and legal service to was that a partner could not accept a client to the extent that it created a conflict with respect to other clients.

"6. There were no restrictions applicable in connection with the use of the letterhead of the firm by individual partners as related to personal matters. All partners, if they had personal correspondence to someone, would have it typed on the law firm's letterhead by the law firm's personnel.

"7. During the years 1980 through 1982, the firm of Carson, Fields, Boal, Jeserich & Asner, by and through any of its individual member partners, never sought to limit defendant Carson's authority in the scope or kind of law in which he was engaged to practice.

"8. During the years 1980 through 1982, Doreen Benton performed services for defendant Carson relating to his farming operations and would perform some such work at the law offices of Carson, Fields, Boal, Jeserich & Asner when and

where she was also employed as a legal secretary. Further, Doreen Benton never attempted to make known to clients of the law firm the distinction and capacity between her role as Carson's personal secretary and legal secretary for the firm of Carson, Fields, Boal, Jeserich & Asner.

"9. There was no objection by any partner of the law firm to allowing Carson to conduct his outside business affairs within the premises of the law firm itself or by utilization of law firm personnel.

"10. There were no restrictions placed on the law firm during the time period from 1980 through 1982 with regard to performing work of a personal nature for a member of the law firm.

"11. During the years 1980 through 1983, Carson did not work for clients on an hourly basis. During this time period, Carson was not aware of the other partners' system of establishing fee arrangements. During the years of 1980 through 1983, Carson never maintained any records of the time or service spent performing legal services and matters for clients.

"12. That Carson, in his practice of law as a licensed attorney within the State of Kansas, has and does provide advice to clients in the field of property law to the extent he feels he is capable. Further, Carson feels and felt himself capable to handle legal affairs of clients which involved preparation of promissory notes and respective mortgages to secure those notes, unless it was something very complicated. Further, Carson considers himself competent to have engaged in advising clients as to their rights which may have been derived under promissory notes, mortgages and deeds of trust, unless there was a complicated problem. Carson did not consider the loan transaction between himself and plaintiff to be a complicated transaction.

"13. In 1978 plaintiff retained the firm of Carson, Fields, Boal, Jeserich & Asner to represent her with regard to the estate proceedings pertaining to the death of her husband, Robert Phillips, which proceedings were filed and pursued in the Johnson County District Court. Further, plaintiff remained a client of the law firm beginning in 1978 and continuing through at least December 31, 1982. Defendant Carson beginning in 1978 and thereafter was involved in an attorney/client relationship with plaintiff with regard to litigation aspects of the Estate of Robert L. Phillips, as well as on other items.

"14. That the law firms were paid a substantial sum from plaintiff in the total amount of $80,000.00 for legal services rendered in the Estate of Robert L. Phillips.

"15. That attorney fees paid by plaintiff as set forth above were paid by plaintiff with the understanding and belief that said payment was to be payment of any and all legal services previously rendered or to be rendered in the future and until such time as the Estate of Robert L. Phillips was closed. The estate of Robert L. Phillips was not closed until some time in the year of 1983.

"16. That on or in close proximity to August, 1980, at a social function, David W. Carson, who was in great financial distress was telling plaintiff the nature of his problems. This was not in the nature of firm business. Plaintiff, however, related to Mr. Carson that she had some money and if $200,000.00 would help him she would loan it to him. Mr. Carson accepted the offer and he agreed to take care of the legalities in connection with said loan transaction, including drafting the promissory note and mortgage on certain Arizona property and filing same in

accordance with defendant Carson's representation that plaintiff would be fully secured thereby. Further, defendant Carson indeed had prepared a promissory note and mortgage with Mr. Carson and his wife as signators on same, no firm or firm members were on same.

"17. That with regard to defendant Carson's agreement and performance pursuant thereto to provide legal services to plaintiff as set forth in the paragraph immediately preceding above pertaining to the preparation of promissory notes, mortgages and/or deeds of trust and proper filing of same, he agreed to perform such legal services additionally and with the authority as plaintiff's legal counsel with regard to said transactions and those subsequently related thereto.

"18. That on or about March 3, 1981, plaintiff loaned to defendant Carson and his wife an additional $70,000.00. Further, that at or about such time, defendant Carson agreed to prepare a promissory note and mortgage and have same filed with the State of Arizona, which was in fact done.

"19. That during the course of Carson's legal representation of plaintiff during the probate matters pending in Johnson County, Kansas, Carson gained particular knowledge as to the financial status of plaintiff's husband's estate. Defendant Asner prepared, in the course of his attorney/client relationship with plaintiff, an inventory of plaintiff's property specifying the amount of money plaintiff owed as of April 22, 1980.

"20. That on several occasions defendant Carson did send plaintiff certain interest payments, he represented her in a dispute with a contractor to build her house, represented her in regard to certain sulphur leases in Pecos County, Texas.

"21. That during the time frame certain work was done on plaintiff's husband's estate, some tax work was done and contracts made by the defendant firm, for which they received compensation. All of which matters are collateral to the issues of this case.

"22. That a day or so prior to March 29, 1982, Carson and plaintiff had a telephone conversation wherein Carson told plaintiff he had an opportunity to sell his Arizona property on which plaintiff had a secured mortgage and asked if plaintiff would come over to his law office and sign a release of the mortgage. That at such time, Carson suggested giving plaintiff a mortgage on his 90 acre home place.

"23. That on or about March 29, 1982, plaintiff went to the law office of Carson located with the complex of offices of the firm of Carson, Fields, Boal, Jeserich & Asner and signed a release on the Arizona property. Further, that at such time and place, Carson represented to plaintiff that he would give her a mortgage on his 90 acre home place in Wyandotte County, that such mortgage would put her in a better position and that it was a third mortgage. Further, that at such time and place, Carson stated to plaintiff he would take care of the legalities of the transaction and inquired if plaintiff wanted the mortgage recorded, to which plaintiff responded 'Yes.'

"24. That pursuant to Carson's agreement to do so and plaintiff's request that he do so, Carson also agreed to prepare a promissory note to represent the indebtedness in which was to include an add-on past due interest, which interest had not been paid according to the terms of prior promissory notes provided plaintiff by Carson.

"25. That Carson never caused the Kansas real estate mortgage on his home place to be filed on behalf of plaintiff.

"26. That throughout the loan transactions between plaintiff and Carson up through March 29, 1982, plaintiff believed that Carson was acting on her behalf as her lawyer with regard to the preparation of legal documents and advice pertaining thereto.

"27. That at or about the time of the March 29, 1982, transaction between Carson and plaintiff, plaintiff did not know that without her releasing the mortgage on the Arizona property, Carson could not have received the proceeds from the sale therefrom. Further, that at or about such time, plaintiff did not know how to determine the amount of mortgages presently existing on Carson's home place in Wyandotte County. Further, that at or about such time, plaintiff did not know that she had certain legal rights to exercise against Carson as a result of his being in default and she was not informed of the same. Further, that at or about such time, plaintiff did not know and was not informed that in order for her to realize on the Kansas mortgage interest she was to receive from Carson in the event of his default, she would have to pay off all mortgage holders with a prior recorded interest in said property.

"28. That at no time was plaintiff ever informed by anyone that the advice and activities of Carson as her attorney as it related to the loan transactions were not being performed by him as her attorney.

"29. That Carson, by and through his attorney, David W. Boal, filed a petition in bankruptcy in the U.S. Bankruptcy Court for the District of Kansas, which court lifted a stay order and granted this Court authority to proceed. The Bankruptcy Court caused the mortgage that Carson had given to plaintiff on his Wyandotte County home place and which plaintiff had had to file on her own behalf to be avoided as a preference pursuant to 11 U.S.C. Sec. 547(b). The dischargeability of said debt is not for this Court to resolve.

"Based upon the above and foregoing findings, all of which are incorporated herein by this reference, the Court makes the following conclusions of law.

"1. That plaintiff was a client of the law firm of Carson, Fields, Boal, Jeserich & Asner, from at least 1978 through the end of 1982, for the major purpose of handling the estate of plaintiff's husband.

"2. That with regard to the loan transaction between plaintiff and defendant Carson and his wife during the time periods between August, 1980 and March 29, 1982, defendant Carson owed plaintiff a duty to properly perform the legal acts necessary to consummate said transactions and render appropriate and proper legal advice to plaintiff as related to said transactions, the performance or breach of which duty should be adjudged under standards of care applicable to attorneys in the State of Kansas.

"3. That defendant Carson breached his duty of due care to plaintiff with regard to the loan transactions and his duty as her attorney as set forth hereinabove, in the following manner:

"A. Failure to file or have filed in the appropriate location the real estate mortgage on his Wyandotte County home place which he agreed to provide plaintiff and which he agreed to file or have filed, the failure of which in conjunction with the filing of defendant Carson's petition in bankruptcy on or about September, 1982, caused plaintiff to be unsecured.

"B. In failing to advise plaintiff throughout these loan transactions that if plaintiff wanted independent legal counsel to advise her regarding the proposed transaction that she should obtain same and would have to go elsewhere to obtain same.

"C. In failing to advise plaintiff with regard to the loan transaction to obtain an independent examination report on the title of any property proposed to be given to secure the loan, showing the amount of the property owned, the nature of the ownership, and the existence, amount and details concerning any encumbrances on that property;

"D. In failing to advise plaintiff with regard to the loan transaction to obtain an independent appraisal on the property proposed to be given as security for the loan;

"E. In failing to advise plaintiff to obtain a full financial statement from himself and his wife as borrowers;

"F. In failing to advise plaintiff to obtain assurances (by contract or otherwise) that the costs of protecting the client with respect to the loan, including legal fees, is borne not by plaintiff but by Carson and his wife as the borrowers;

"G. In failing to advise plaintiff as to the legal effect and consequences of default in the payment of the loan, including failing to advise plaintiff that if the loan is secured by a mortgage which is junior and inferior to the mortgages that plaintiff must be prepared to pay off all prior mortgages in case there is a default on any of the loans outstanding on the property and subsequent mortgage foreclosure action.

"4. That as a direct and proximate result of the above and foregoing negligence and breach of duty by defendant Carson as attorney for plaintiff with regard to the subject loan transactions spanning the time period between August, 1980 through March 29, 1982 and thereafter, plaintiff has been damaged in the total sum of $378,107.45, which figure represents the total amount of principal and interest on the loan obligation as of the 9th day of May, 1985, and which amount shall bear interest at the judgment rate of 15% per annum from and after said date until paid in full.

"5. That the loan of monies by plaintiff to Carson and/or his wife as set forth hereinafter were private loans in that the monies were lent to defendant Carson and his wife and not to the law firm of Carson, Fields, Boal, Jeserich & Asner and/or its other individual partners and defendants herein.

"6. That defendant Carson, in acting as plaintiff's attorney as relating to the performance of legal acts and the rendition of legal advice throughout the loan transactions between plaintiff and defendant Carson and his wife spanning the time period between August, 1980 through March 29, 1982 and thereafter, was not acting as a matter of law within the scope of his actual, apparent and/or implied authority and were not as a matter of law acts engaged in by the defendant Carson for apparently carrying on the business of the law firm partnership in the usual way.

"7. That plaintiff's beliefs that the actions of defendant Carson as her attorney with regard to the loan transactions were engaged in within defendant Carson's actual, apparent and/or implied authority were a personal matter between plaintiff and defendant Carson and Mrs. Carson.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that:

"1. Judgment shall be rendered in favor of plaintiff and against defendant Carson for his breach of duty in the negligent performance of legal services and advice in the total sum of $378,107.45, said judgment to carry interest from and after May 9, 1985 at the judgment rate of 15% per annum until paid in full.

"2. That judgment be rendered in favor of the defendant partnership Carson, Fields, Boal, Jeserich & Asner and its individual partners, John H. Fields, David W. Boal, Gerald N. Jeserich and Scott I. Asner and against plaintiff on the grounds that as a matter of law said defendants are not vicariously liable to plaintiff for the breach of duty and negligence of defendant Carson in light of the above and foregoing findings of fact and conclusions of law.

"This Modified Memorandum Decision, when signed by the Judge and filed with the Clerk shall constitute the Judgment of the Court."

Appellant Carson states the issues on this appeal as follows:

"I. Whether the District Court erred in granting summary judgment on the issue of negligence when there were genuine issues as to material fact remaining unresolved.

"II. Whether the District Court was premature in granting summary judgment on the issue of negligence when the issue of the mortgage security was not resolved in the bankruptcy court.

"III. Whether the court erred in not granting an unencumbered money judgment on the confession of judgment by the debtor."

Carson first argues that summary judgment is not normally appropriate in negligence cases. That is true. This court has held that summary judgment is seldom proper when the issue is negligence. *Knowles v. Klase*, 204 Kan. 156, 460 P.2d 444 (1969), was a slip and fall case in which summary judgment was entered by the trial judge before trial. We reversed, noting that summary judgment "is seldom proper in negligence cases," and finding that the facts were disputed and that the matter should have been resolved by jury trial and not by summary judgment. Similarly, in *Lawrence v. Deemy*, 204 Kan. 299, 461 P.2d 770 (1969), we reversed the trial court's entry of summary judgment in a personal injury action arising out of an automobile collision. There, discovery was incomplete as the deposition of the defendant had not been taken. There were unresolved issues of material fact, and we held that the entry of summary judgment was inappropriate.

This does not mean, however, that summary judgment is never appropriate in negligence cases. We have affirmed summary judgment in several negligence cases where there was no genuine issue of material fact and the undisputed material facts

supported a finding of no negligence. In *Albright v. McElroy*, 207 Kan. 233, 484 P.2d 1010 (1971), we upheld the entry of summary judgment, agreeing with the trial court that, giving the plaintiff's evidence the most favorable construction possible, there was no showing of causal negligence on the part of the defendant. Discovery had been completed, and there was no evidence that the defendant, a contractor who was excavating a street to construct a manhole, had failed to give proper warning or was guilty of any actionable negligence. *Smith v. Engel*, 206 Kan. 298, 477 P.2d 937 (1970), was a personal injury action arising out of an automobile collision. The defendant was properly making a left turn when her vehicle was rear-ended by another car in which plaintiff was a passenger. Discovery had been completed. The trial court held that there was no evidence, even when viewed in the light most favorable to plaintiff, that the defendant driver was negligent. We affirmed the entry of summary judgment. See *Shehi v. Southwest Rentals, Inc.*, 199 Kan. 265, 428 P.2d 838 (1967).

Appellant argues that there were genuine issues of material fact here which remain unresolved, and therefore summary judgment was improper. Our statute, K.S.A. 60-256, provides for the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We have interpreted the statute many times, holding that summary judgment is proper if no genuine issue of fact remains, giving the benefit of all inferences which may be drawn from the admitted facts to the party against whom judgment is sought. See *Lessley v. Hardage*, 240 Kan. 72, Syl. ¶ 1, 727 P.2d 440 (1986); *Finkbiner v. Clay County*, 238 Kan. 856, 857-58, 714 P.2d 1380 (1986); *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 238 Kan. 384, 390, 710 P.2d 1297 (1985).

Carson argues that in his motion for summary judgment and confession of judgment, he was specific in stating that he was not admitting negligence. He does not challenge, however, any of the facts relating to his conduct and business and professional relationship with Mrs. Phillips. He does not challenge the accuracy of the 29 paragraphs of findings of fact included within the trial court's order. He notes that Mrs. Phillips opposed his

motion for summary judgment and that she asserted that there were unresolved issues of material fact. She did oppose his motion, but for a different reason. Carson argued to the trial court that his confession of judgment on the note rendered her negligence claim invalid for want of damages; plaintiff strenuously opposed that argument. The facts which she contended were unresolved dealt with the liability of the partnership and the other individual partners of the firm, not with Carson's individual liability. The material facts relating to Carson's professional conduct, upon which the trial court made a finding of negligence, were undisputed. A trial court has the inherent authority to summarily dispose of a matter on its own motion where there remains no genuine issue as to any material fact, and, giving the benefit of all reasonable inferences that may be drawn from the evidence, judgment must be for one of the parties as a matter of law. *Missouri Medical Ins. Co. v. Wong*, 234 Kan. 811, 816, 676 P.2d 113 (1984); *Green v. Kaesler-Allen Lumber Co.*, 197 Kan. 788, Syl. ¶ 1, 420 P.2d 1019 (1966). We will return to the matter of professional negligence later in this opinion.

Carson next argues that a crucial factual issue remained regarding whether or not plaintiff sustained any damage. He bases this upon his confession of judgment on the note, and also claims that it is not clear that he caused her to lose security for her loan, and that she waived her rights to the collateral in the bankruptcy proceeding, leaving her with only a claim for a money judgment on the note, which he has already confessed.

We consider these in sequence. Carson treats this action as though it were a suit on the note given by David W. Carson and Marjorie Carson to Mrs. Phillips. His brief is submitted on behalf of both David W. and Marjorie Carson. Insofar as we are able to ascertain from the records before us, however, Marjorie Carson has never been a party to this action. This is not a suit upon a note against the makers thereof. It is and has been since the petition was filed an action against Carson and his law partners, individually and as a partnership, for damages for professional negligence and breach of fiduciary duty. The fact that Mrs. Phillips is seeking as damages only the sum of money, not yet repaid, which she loaned to Carson, plus accrued interest thereon, while she might have sought damages of other kind, character, or amount does not convert the suit from a negligence

action for damages to an action upon a promissory note. His confession of judgment for the unpaid principal amount and accrued interest on the note was not accepted by the plaintiff. While we find no Kansas cases in point, and none have been cited in the briefs, it is the general rule that a creditor must consent to or ratify a judgment by confession. Such a judgment is not binding on the plaintiff unless the plaintiff consents to the judgment, or later ratifies it. See 49 C.J.S. Judgments § 148 and 47 Am. Jur. 2d Judgments § 1102 and cases cited therein. Here, there was no consent by the plaintiff and no acceptance of the offer of a judgment by confession. Since no judgment by confession was entered by the court, there could be no ratification thereof. We also note that relief from the automatic stay was granted by the bankruptcy court and the United States District Court so that Mrs. Phillips might pursue her claim based on allegations of legal malpractice and breach of fiduciary duty. The stay was not lifted so that she might file a suit on a note for recovery of debt.

Carson claims that it is not clear that he caused Mrs. Phillips to lose security for her loan. The undisputed evidence is that by his counsel and advice she was persuaded to release her second mortgage on Arizona property, which was a desirable enough security that one of Carson's commercial creditors wished to have it for security purposes. In exchange, she received a fourth and unrecorded mortgage on Wyandotte County land. Though Carson contends that the land was worth two million dollars in March 1982, when he gave Mrs. Phillips the fourth mortgage, his amended disclosure statement filed with the bankruptcy court sixteen months later places the value at not more than the principal and accrued interest of the first mortgage, an amount less than $500,000. Later, the property was transferred to the first mortgage holder who sold about one-half of the land, leaving 42 acres to satisfy the third mortgage of Metro North Bank, some $365,000, and that of plaintiff. We do not know whether the first mortgage has been fully satisfied. We are told that the second mortgage has been satisfied from the sale of other property. Although we do not have the precise bankruptcy court records before us, it is apparent that at the time Mrs. Phillips relinquished her interest she obviously had no reasonable possibility of recovery. In light of the other prior claims, her interest was worthless.

Carson also contends that Mrs. Phillips waived her security by seeking avoidance of her interest in the bankruptcy proceeding. The petition to avoid her mortgage as a preference, however, was filed by the trustee in bankruptcy, not by Mrs. Phillips. It is possible that she admitted the facts upon which that petition was based—she could hardly have done otherwise, if they were true—but we do not have those proceedings before us. At any rate, the admission of facts, if true, by a party defendant in an action does not constitute a voluntary waiver of a claim or right. We have nothing before us to support appellant's argument in this regard. We find it clear on the record before us that Mrs. Phillips has sustained a loss. On the advice of counsel, she invested over a quarter of a million dollars, secured only by a fourth mortgage which turned out to be worthless. After some 18 months in the bankruptcy court, Mrs. Phillips saw her security melt away and she filed this action. Neither the filing of the action nor the entry of summary judgment were premature.

Carson contends that the elements of professional negligence are not satisfied by his confession of judgment on the promissory note. That may be true, but the trial court in considering the motion for summary judgment was not limited to a review of the motion and confession filed by Carson. As noted earlier, the trial court has inherent authority to enter summary judgment on its own motion, and in so doing the court was fully justified and authorized to review the pleadings, the depositions, the documents, the admissions and responses to interrogatories, and the entire record before him. The court did so and concluded that Carson was negligent.

The elements of legal malpractice are: the existence of an attorney-client relationship giving rise to a duty; that the attorney breached that duty by act or omission; that the attorney's breach of duty proximately caused injury to the client; and that the client sustained actual damages. Meiselman, Attorney Malpractice: Law and Procedure § 3.1 (1980). In addition, Meiselman points out (§ 1.5, at 9) that business transactions between attorney and client are subject to strict and crucial scrutiny, and such agreements are construed in a manner most favorable to the client. Further, at page 11, Meiselman states:

"Any doubt in determining whether an attorney-client relationship existed

between a purchaser-attorney and a vendor-client should readily be resolved against the attorney in the absence of proof of clear and forthright statements made by the attorney to the clients that they should obtain outside independent legal consultation before continuing the negotiation process. The attorney will be expected to affirmatively demonstrate that his transactions with the client were in all respects open, voluntary and fully understood."

The Code of Professional Responsibility, by which attorneys in this state are governed, states:

"DR 5-104 *Limiting Business Relations with a Client.*
(A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure." 235 Kan. cxlvi.

A comment on this section of the Kansas Code of Professional Responsibility, pertinent here, is as follows:

"It is not uncommon for attorneys to engage in business transactions with clients and other nonlawyers. Despite intentions to the contrary, members of the bar quite often use their legal knowledge or give advice on behalf of such joint efforts. In these situations courts are prone to find the existence of an attorney-client relationship upon the complaint of the lay party. The existence of retainer or fee charge is usually immaterial.

". . . In practice, it is easier to support a malpractice claim in situations of financial involvement with clients than to prove an ethical violation. Under such circumstances if the client suffers injury the case law heavily underscores the likelihood of his recovery.

"An attorney who is confronted with the possibility of a joint business venture with a client is cautioned to consider the increased malpractice and ethical risks along with the financial considerations. In all such situations there should be a complete disclosure, and the client should be strongly urged to seek independent legal and other professional advice." Stern and Martin, *Mitigating the Risk of Becoming a Defendant in a Malpractice Action by Your Former Client,* 47 J.K.B.A. 41, 46 (1978).

The trial court found that Carson was Mrs. Phillips' attorney throughout the critical period of time, and that he was representing her as her attorney and owed her the duty of attorney to client in advising her about the loans he was securing and the security which he gave for those loans. Paragraphs 13 through 28 of the trial court's findings of fact, in particular, support the trial court's conclusions of law. The trial court also found that Carson breached his professional duty to plaintiff by failing to advise her to secure outside independent legal and financial advice. See conclusions 3 B, C, and D of the trial court opinion. Those conclusions are all supported by the undisputed facts.

In *Ford v. Guarantee Abstract & Title Co.*, 220 Kan. 244, 553 P.2d 254 (1976), we summarized the duty of attorney to client in Syl. ¶¶ 3 and 4. We said:

"The relationship of an attorney to his client is fiduciary in character, binding the attorney to the highest degree of fidelity and good faith to his client on account of the trust and confidence imposed."

"A fiduciary relation does not depend upon some technical relation created by, or defined in, law. It may exist under a variety of circumstances, and does exist in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence."

Under the extensive factual record before us, we agree with the trial court that there existed an attorney and client relationship between Carson and Mrs. Phillips during the time that Carson secured loans from Mrs. Phillips, advised her or failed to advise her about them, and agreed to take care of preparing and filing all necessary documents in connection therewith. That relationship gave rise to the duty upon the attorney to properly, competently, and adequately counsel, advise, and represent the client. That duty was breached, not only in failing to file the final mortgage of record, but also in failing to advise Mrs. Phillips of the legal ramifications of the transactions, in failing to advise her of the legal consequences of the changes in security, in failing to recommend that she secure independent counsel, and in other ways pointed out by the trial court in Paragraph 3 of his conclusions of law. Finally, we agree with the trial court that Carson's extensive breaches of the Code of Professional Responsibility proximately caused injury to his client, and that she sustained substantial actual damages.

Finally, Carson argues that Mrs. Phillips should not be permitted to seek a determination of negligence in this action since a party vitally interested in the matter, Carson's professional liability insurance carrier, is not a party. He argues that plaintiff is in effect seeking a declaratory judgment that Carson was guilty of professional negligence, and that such an action is improper without the presence of the insurance carrier. This argument overlooks the gist of this action: one for damages based upon claims of negligence. It has long been the law of Kansas that in an automobile collision case, evidence that a party was or was not insured is inadmissible. *Nirschl v. Webb*, 239 Kan. 90, 93, 716 P.2d 173 (1986). Similarly, an insurance carrier for a de-

fendant in a tort action is not ordinarily a proper party to the action, with the exception of the insurer in a "filed policy" action. See *Nirschl v. Webb*, 239 Kan. 90; *Kirtland v. Tri-State Insurance Co.*, 220 Kan. 631, 556 P.2d 199 (1976); *Dunn v. Jones*, 143 Kan. 218, 53 P.2d 918 (1936). And see also 67A C.J.S. Parties § 45, which, in discussing who may be joined as defendants in a tort action, states: "The fact that insurance companies are bound by contract to defend their insureds does not generally make them parties defendant who may be joined in an action against the insured . . . ." A defendant's liability insurance carrier is ordinarily not a necessary party in a tort action.

The record before us indicates that the insurance carrier has been notified of the pendency of this action. It did not seek to intervene, and no motion has been filed to make it a party. Plaintiff did not err in failing to join it as a party. The insurance carrier's liability on its policy with Carson is not an issue before us in this case. We hold that the trial court properly entered summary judgment against Carson based on his professional negligence.

We turn now to the cross-appeal by Thelma L. Phillips. She contends that the trial court erred in granting summary judgment for the partnership and its individual partners, and in ruling as a matter of law that they were not vicariously liable for the damages caused plaintiff by Carson's professional negligence. The trial court, in its conclusions of law numbered six and seven, found that Carson, while acting as plaintiff's attorney in regard to the loan transaction, was not, as a matter of law, acting within the scope of his actual, apparent, and/or implied authority; that Carson was not, as a matter of law, engaged in acts for apparently carrying on the business of the law firm partnership in the usual way; and that the plaintiff's beliefs that Carson's actions were a part of the law firm's regular practice of law were not controlling.

Kansas has adopted the Uniform Partnership Act, portions of which we must first review. K.S.A. 56-309 deals with the authority of a partner to bind the partnership. It reads in pertinent part:

"(a) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he or she is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular

matter, and the person with whom the partner is dealing has knowledge of the fact that he or she has no such authority.

"(b) An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners."

K.S.A. 56-313 deals with wrongful acts of a partner. It provides:

"Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his or her copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act."

We considered the scope and application of K.S.A. 56-309 in *Executive Financial Services, Inc. v. Loyd,* 238 Kan. 663, 665, 715 P.2d 376 (1986). We held that one general partner, Loyd, had both apparent and actual authority to act within the usual course of the partnership business, even though he used his authority illegally, to the detriment of the corporation with whom he dealt and of his general partner, Mohr.

The evidence here is clear that Carson and the partnership were representing Mrs. Phillips and were her attorneys for the primary purpose of probating the estate of her deceased husband. Additionally, the firm charged her a fee which was to cover not only the probate matter, but all other legal services she might require individually during the term of the probate. Additional legal services were provided for her, as already discussed, without additional charge.

Advising a client on the propriety of making loans, the legality and sufficiency of proposed security, the method of ascertaining the value of the security, the method of recording security documents and the like are all matters well within the scope of the general practice of law. Had Mrs. Phillips been considering a loan to a third person and had a member of the partnership advised her as Carson did (or as he failed to advise her), there would be little question of the firm's responsibility in the event that she sustained damages as a result of that action or omission. Similarly, the preparation of notes and mortgages, and the filing of mortgages for record, are matters well within the scope of the general practice of law handled daily by lawyers throughout this state.

*Cook v. Brundidge, Fountain, Elliott & Churchill,* 533 S.W.2d 751 (Tex. 1976), a case decided by the Supreme Court of Texas,

is somewhat similar, and is illustrative. One of the plaintiffs in that case, Cook, was represented by an attorney, Warren C. Lyon, and by the law firm with which he was associated, Brundidge, Fountain, Elliott & Churchill, during her divorce proceedings. She discussed with Lyon the investment of some monies she was to receive from an estate. The plaintiffs, Cook, her aunt, and her sister ultimately had an attorney in Illinois send to Warren Lyon, as attorney for Isabelle Griffin, Winifred Baker, and Betty Cook, a check for over $60,000, which check was endorsed by Lyon as attorney for the three plaintiffs. He was to invest this money with a corporation, Texas Yummers, of which he was president. The money was to be paid back with substantial interest. He later persuaded plaintiffs to exchange their rights under the investment contract for stock in Texas Yummers. This they did. Shortly thereafter, the corporation was adjudged bankrupt and this suit followed.

The law firm admitted that Lyon was a partner in the practice of law but they denied that he was acting in the capacity of a partner in giving the advice, performing the services, and doing the acts complained of by plaintiffs. They contended that he was acting in his individual capacity with respect to his real estate business and as a stockholder in the corporation known as Texas Yummers, and that he was not authorized to act as an investment counselor, which was not a part of the firm's law business. At no time did anyone indicate to the plaintiffs that Lyon was acting in any capacity other than as an attorney or that he was acting separate from the law firm of which he was a partner. The Texas court quotes from *Croisant v. Watrud*, 248 Or. 234, 242-43, 432 P.2d 799 (1967), where it is said:

"The reasonableness of a third person's belief in assuming that a partner is acting within the scope of the partnership should not be tested by the profession's own description of the functions of its members. . . . Whether a third person's belief is reasonable . . . is a question which must be answered upon the basis of the facts in the particular case."

The *Brundidge* court, 533 S.W.2d at 757-59, reviewed several cases involving the liability of a professional partnership. It then said:

"Surprisingly, also, only two of the jurisdictions, California and Wyoming, considered the problem in the light of their respective uniform partnership acts which, in our view are particularly relevant, if not controlling. Indeed, the

conclusions we reach, later stated, rest in great measure upon provisions of the Texas Uniform Partnership Act. [Citation omitted.]

. . . .

"[O]ne seeking to charge a principal through apparent authority of an agent must prove such conduct on the part of the principal as would lead a reasonable prudent person to suppose that the agent had the authority he purports to exercise. [Citation omitted.] The extent of authority of a partner is determined essentially by the same principles as those measuring the scope of the authority of an agent. . . .

"[I]t is not claimed either that Lyon was authorized by the partnership to act as he did in the Yummers matter or that Betty L. Cook, et al., had notice or knowledge that Lyon had no authority to act for the partnership in what he did. . . . [T]he crucial consideration in determining whether the law firm is bound by the acts of Lyon by force of the statutory provisions is whether in receiving the funds of Betty L. Cook, et al., in the sum of $60,343.25, Lyon was 'apparently carrying on in the usual way the business of the partnership'. . . or, as also expressed, whether he was 'acting in the ordinary course of the business of the partnership.' . . .

"It was the burden of the law firm as the defendant-movant for summary judgment to establish as a matter of law that no fact issue stands in the way of judgment in its favor. . . . The summary judgment burden was that of establishing the negative of the statutory issues, namely, that Lyon was not apparently carrying on in the usual way the business of the law firm, i.e., was not acting in the ordinary course of its business and hence was not acting within the scope of apparent authority by force of statute. . . .

"[T]he acceptance by Lyon of the check of $60,343.25 payable to 'Warren Lyon as Attorney for' Betty L. Cook, et al., together with the deposition testimony of Betty L. Cook upon which the motion of the law firm for summary judgment also relied for support, and, further, the affidavit of Betty L. Cook and that of the Illinois attorney demonstrate the existence of fact issues with respect to the statutory conditions to liability of the partnership."

The summary judgment entered for the law firm was reversed, and the case was remanded for trial.

Mrs. Phillips asserts that there is a factual question remaining regarding whether the transactions were apparently authorized by the partnership. She claims that it is the reasonable belief of the third party concerning the existence of apparent authority that is determinative. Certainly when a lawyer is consulting with a client on legal matters in the lawyer's office, the appearances to the client and the reasonable belief of the client are persuasive upon the issue. As the firm points out, however, the indication of authority must come from the principal. In *Theis v. duPont, Glore Forgan, Inc.*, 212 Kan. 301, 306, 510 P.2d 1212 (1973), this court defined the apparent agent:

" 'An ostensible or apparent agent is one whom the principal has intentionally or by want of ordinary care induced and permitted third persons to believe to be

his agent even though no authority, either express or implied, has been conferred upon him.' " Quoting from *Greep v. Bruns*, 160 Kan. 48, Syl. ¶ 5, 159 P.2d 803 (1945).

While in this case no partner in the firm told Phillips that Carson's actions were within his authority as a partner, no one told her that his actions were not within his authority as a member of the law firm. Two of the firm's employees, Doreen Benton and Judy Tranckino, did personal work for Mr. Carson, including preparation of the notes and mortgages herein. While Mrs. Phillips knew Mrs. Benton did personal work for Carson, no one told her that Benton's work on this project was not as a firm employee. The fact that Benton and Tranckino did personal work for Carson was known and not objected to by the other members of the law firm. Letters from Carson to Mrs. Phillips regarding this loan were on firm stationery and mailed in firm envelopes. Using firm supplies and personnel for personal business was apparently an acceptable practice within the firm. There was no firm policy prohibiting a partner from transacting business with a client, the only restriction regarding acceptance of a client being that a partner could not represent a client if doing so would cause a conflict with other clients of the firm. Whether Carson was apparently carrying on the usual business of the partnership, or whether his wrongful acts or omissions were in the usual course of business or with the authority of his partners, under K.S.A. 56-309 and -313, are fact issues.

Under all of the facts and circumstances, we hold that the trial court erred in entering summary judgment on behalf of the partnership and the individual partners thereof, there being substantial competent evidence from which a trier of fact could find that Carson had apparent authority to prepare the notes and mortgages, and to advise Mrs. Phillips in the matter, as a part of the regular practice of law of the firm. On the record before the trial court, we cannot say as a matter of law that Carson was not acting within the scope of his actual or apparent authority as a member of the firm.

The summary judgment entered by the trial court in favor of Thelma L. Phillips and against David W. Carson is affirmed. The summary judgment entered in behalf of the partnership, Carson, Fields, Boal, Jeserich & Asner, and the individual partners of the firm, John H. Fields, David W. Boal, Gerald N. Jeserich and

Scott I. Asner, and against Thelma L. Phillips, is reversed. The case is remanded to the District Court of Johnson County for further proceedings.

ALLEGRUCCI, J., not participating.