**Rozanna N. ELLIOTT and the Estate of William Frank Elliott, Plaintiffs,**

**v.**

**Theodore KITOWSKI, M.D., Defendant.**

Civ. A. No. 89–1495–B.

United States District Court,
D. Kansas.

Feb. 4, 1992.

Randall E. Fisher, Mark B. Hutton, Michaud, Hutton & Bradshaw, Wichita, Kan., for plaintiffs.

Scott K. Logan, Logan & Logan, Prairie Village, Kan., for defendant.

## MEMORANDUM AND ORDER

BELOT, District Judge.

Rozanna Elliott and the Estate of William Frank Elliott bring this diversity of citizenship action to recover damages for alleged negligent medical treatment provided to plaintiff's decedent. The plaintiffs claim Dr. Kitowski's failure to timely diagnose and treat William Elliott's cancer deprived him of a complete cure and caused his death. Alternatively, plaintiffs contend the failure of Dr. Kitowski to timely diagnose and treat William Elliott's cancer deprived him of a substantial and appreciable chance of a cure (Doc. 50, p. 17). Dr. Kitowski responds that even if his actions fell below the standard of care, his breach of duty was neither the cause in fact nor an appreciable cause of Elliott's death (Doc. 44). The matter comes before the court upon Dr. Kitowski's motion for summary judgment (Doc. 43).

Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose "of the summary judgment rule is to isolate and dispose of factually· unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that proper-

ly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Entry of summary judgment is mandated, after an adequate time for discovery and upon motion, against a party who 'fails to make a showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Aldrich Enters., Inc. v. United States,* 938 F.2d 1134, 1138 (10th Cir.1991) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Summary judgment is inappropriate, however, if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (10th Cir.1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once the moving party properly supports its motion, the nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Devery Implement Co. v. J.I. Case Co.,* 944 F.2d 724, 726 (10th Cir. 1991). The court reviews the evidence in a light most favorable to the non-moving party, *e.g., Washington v. Board of Public Utilities,* 939 F.2d 901, 903 (10th Cir.1991), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

Preliminarily, the court notes that most of the facts still appear to be in dispute. Of the 36 "undisputed facts" set forth in Dr. Kitowski's motion, only 15 are admitted. The remainder, which deal mainly with deposition testimony of expert witnesses, are either denied or admitted only in part. The large number of disputed or partly disputed facts has made the court's task more difficult and the parties are admonished that future motions for summary

judgment, if any, containing so many disputed facts will be regarded with disfavor.

In this diversity action, it is appropriate to consider the Kansas Supreme Court's comments regarding causation and burden of proof in medical negligence cases. In *Bacon v. Mercy Hospital of Ft. Scott,* 243 Kan. 303, 756 P.2d 416 (1988), the Court stated:

"The first issue on appeal is whether the Bacons submitted sufficient evidence regarding causation to avoid summary judgment. Although the question of whether a defendant's actions proximately caused a plaintiff's injury is normally a question of fact for the jury, where the facts of a case are susceptible to only one conclusion, the question is one of law and may be properly subject to summary judgment. *Baker v. City of Garden City,* 240 Kan. 554, 557, 731 P.2d 278 (1987).

Summary judgment is seldom proper in negligence cases. *Phillips v. Carson,* 240 Kan. 462, 472, 731 P.2d 820 (1987). On the other hand, the appellees do not, in order to prevail in their summary judgment motions, need to prove they were not negligent.

Negligence is never presumed, and may not be inferred merely from a lack of success or an adverse result from treatment. *Tatro v. Lueken,* 212 Kan. 606, 611, 512 P.2d 529 (1973). The plaintiff in a medical malpractice case bears the burden of showing not only the doctor's negligence, *but that the negligence caused the injury.* See *Funke v. Fieldman,* 212 Kan. 524, 535, 512 P.2d 539 (1973). Except where the lack of reasonable care or the existence of proximate cause is apparent to the average layman from common knowledge or experience, expert testimony is required in medical malpractice cases to establish the accepted standard of care and to prove causation. *Webb v. Lungstrum,* 223 Kan. 487, 490, 575 P.2d 22 (1978); *Karrigan v. Nazareth Convent & Academy, Inc.,* 212 Kan. 44, 48–51, 510 P.2d 190 (1973). Expert witnesses must confine their opinions to matters in issue which are certain

or probable and not testify as to mere possibilities. *Nunez v. Wilson*, 211 Kan. 443, Syl. ¶ 1, 507 P.2d 329 (1973)." (emphasis supplied)

A brief summary of the undisputed and conceded facts follows:

William Elliott consulted his physician, Dr. Laws, in July, 1987, complaining of intestinal problems. On July 21, 1987, Dr. Kitowski, at the request of Dr. Laws, took a series of barium enhanced colon x-rays of Elliott. Dr. Kitowski misinterpreted the x-rays as normal. In February, 1988, Elliott returned to see Dr. Laws with the same complaint. Dr. Laws again directed Dr. Kitowski to take a series of barium enhanced colon x-rays. These x-rays were taken on March 1, 1988. Dr. Kitowski again misinterpreted the x-rays as normal. Elliott continued to experience problems, and in November, 1988, Dr. Laws referred him to a specialist, Dr. Reida, who diagnosed Elliott as having metastatic colon cancer. Elliott underwent surgery on November 11, 1988, and later died of cancer on August 14, 1989.

■ Having conceded for purposes of this motion that his actions fell below the standard of care, Dr. Kitowski predicates his motion solely on issues of causation. Dr. Kitowski contends that the causation opinions of plaintiffs' experts are based on speculation and fail to prove his actions caused harm to Elliott (Doc. 44, p. 13). Indeed, Dr. Kitowski claims "Dr. Moore and Dr. Kouri [experts retained by plaintiff] both *admit that it is speculation* as to what the status of Mr. Elliott's cancer was in 1987 or 1988." (Doc. 44, p. 15) (emphasis supplied). Unfortunately, Dr. Kitowski has made no specific reference to portions of the record where these alleged admissions can be found, and the court has not located them in the various pages of Drs. Moore's and Kouri's depositions supplied as exhibits to the parties' memoranda. Thus, the court will assume that no such admissions exist.

Dr. Moore, one of plaintiffs' "causation experts", opined that Elliott's cancer was present in his colon for "perhaps a year ... maybe two, maybe three years ..." prior to July 21, 1987, the date of the first mis-read x-ray. However, the presence of the cancer on and before July, 1987 is not the crucial issue. The crucial issue is whether the cancer had begun to metastasize or spread from the colon on or before that date because the testimony suggests that if metastasis has occurred, death is inevitable.

It is apparent that there are disputed issues of material fact regarding the extent and possible spread of Elliott's cancer at the time of the July, 1987 x-ray. According to an interrogatory answer, Dr. Belt, an oncologist retained by Dr. Kitowski, will testify Elliott's cancer had metastasized to the liver and lymph system by July, 1987, and any failure to diagnose Elliott's cancer in either July, 1987 or March, 1988, did not deprive him of a chance of survival or cure. On the other hand, Dr. Moore has testified it is likely the type of lesion shown on the July, 1987 x-ray would have left the decedent with a 63 to 97 percent chance of five year survival if he had been operated on at that time. Dr. Kitowski claims Dr. Moore's opinions are speculative. Plaintiffs respond that any lack of certainty in Dr. Moore's opinion is due to Dr. Kitowski's failure to timely diagnose the tumor.

Similar arguments are advanced with respect to the opinions of Dr. Kouri, another of plaintiffs' "causation experts," as well as those of Dr. Reida, a treating physician.

The court is not persuaded, at this time, that the opinions of plaintiffs' experts regarding the extent of Elliott's cancer in July, 1987, are so lacking in foundation that they are speculative or that they are susceptible of only one conclusion. Accordingly, Dr. Kitowski's motion is denied insofar as it seeks summary judgment on the basis that plaintiffs have not produced sufficient causation evidence supporting their claim pertaining to the July, 1987, x-ray.

■ Turning to the March, 1988, x-ray, Dr. Kitowski contends that plaintiffs have failed to produce sufficient evidence that his misreading of that x-ray deprived Elliott of a substantial chance of survival or cure. What Dr. Kitowski is saying, in essence, is that the testimony of plaintiffs' own experts conclusively shows that Elliott's cancer was so far advanced by

March, 1988, that even if he had properly interpreted the x-rays, nothing could have been done either to cure the cancer or give Elliott a substantial chance for survival.

Plaintiffs have the burden of demonstrating the likelihood metastasis had not occurred in March, 1988, and the evidence establishes they cannot make such a showing. It appears to be undisputed that if an individual has liver metastasis or peritoneal implants, his or her condition is terminal. The question thus becomes whether Elliott's cancer had metastasized prior to March, 1988. Dr. Belt will testify Elliott's cancer had metastasized to the liver and lymph system prior to March, 1988. In paragraph 28 of his statement of uncontroverted facts, Dr. Kitowski states: "Dr. Moore further testified that in his opinion Mr. Elliott's cancer probably had spread to the lymph system, liver, and abdominal cavity by March, 1988." Plaintiffs controvert this statement, contending Dr. Moore testified it was possible and "probably" likely the cancer had spread to those areas by March, 1988.

A review of Dr. Moore's deposition indicates he testified it was likely Elliott's colon cancer had spread to the lymph system, peritoneal implants, and the liver in March, 1988. Plaintiffs' objection to paragraph 28 does not satisfactorily controvert Dr. Kitowski's position. Plaintiffs do not offer any other evidence to raise a genuine issue as to whether Dr. Kitowski's negligence on March 1, 1988, deprived Elliott of a substantial chance of survival or cure. Rather, the evidence, viewed in the light most favorable to plaintiffs, is that nothing Dr. Kitowski did or failed to do in March, 1988, even though admittedly negligent, had any causal bearing on Elliott's chances for survival. In March, 1988, Elliott's fate was sealed.

Accordingly, summary judgment is granted on Dr. Kitowski's motion pertaining to the claims arising from the misreading of the March, 1988, x-ray.

IT IS SO ORDERED.