**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

ERNESTO VIGIL,

      Plaintiff - Appellant,

v.

CITY AND COUNTY OF DENVER,

      Defendant - Appellee.

No. 04-1414
(D. Colorado)
(D.Ct. No. 03-N-154)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BRISCOE**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.[**]

_____

      On January 24, 2003, Ernest Vigil, brought a claim pursuant to 42 U.S.C.

§§ 1981 and 1983, alleging the City and County of Denver (the City) chilled his

First Amendment rights by unlawfully maintaining "Spy Files" on his activities

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

from the late 1960s through March 2000.[1]  (Appellant's App. at 8.)  The City filed a motion for summary judgment, claiming, *inter alia*, Vigil's complaint was barred by the statute of limitations.  The district court agreed and granted summary judgment.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## Standard of Review

We review a summary judgment order *de novo*, applying the same standard as the district court.  *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004), *cert. denied*, 125 S.Ct. 2257 (2005).  "[S]ummary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  *Id*. (internal quotations omitted)*; see also Wolf v. Preferred Risk Life Ins. Co.,* 728 F.2d 1304, 1306 (10th Cir. 1984) ("[I]f the statute of limitations depends on disputed [material] facts, then summary judgment is inappropriate.").

## Background

Recounting the facts in the light most favorable to Vigil, Denver's Police Department Intelligence Bureau (Intelligence Bureau) created secret political

---

[1] Vigil was originally represented by counsel in the district court.  His counsel withdrew, however, prior to the City's Motion for Summary Judgment.  On appeal, Vigil is again represented by counsel.  However, he appeared *pro se* during the summary judgment proceedings.  Where a party appears *pro se*, we liberally construe his pleadings. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003).

intelligence files on Vigil's activities as early as the late 1960s and disseminated this information to other law enforcement agencies until March 2000.[2] Vigil alleges the creation of the files chilled his First Amendment political activities as recounted in his book, The Crusade for Justice: Chicano Militancy and the Government's War on Dissent, (Univ. Wis. Press 1999). In 1994, Vigil filed a Freedom of Information Act request with the Federal Bureau of Investigation (FBI). He received a response in 1998 "that indicated the Denver Police Department had collected intelligence information about [him]." (Appellant's App. at 87.) Although Vigil does not state when, he claims he made several inquiries to the City as to whether it was maintaining files on him -- a question it repeatedly denied.[3] In September 2002, by way of his request, Vigil received a portion of the Intelligence Bureau's surveillance files regarding his activities. In November 2002, he was provided additional documents.

## Discussion

The parties agree Colorado's general two-year statute of limitations for personal injury actions, COLO. REV. STAT. § 13-80-102(1), applies to this case. *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1110-11 (10th Cir. 1998) (§

---

[2] The City maintains the files were created due to Vigil's criminal activity dating to the 1960s.

[3] Vigil's citation to the record does not direct us to specific information and we have not discerned any record support for his allegation.

1981 claims); *Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993) (§ 1983 claims). Vigil filed his complaint on January 24, 2003. Thus, his claims are untimely unless they accrued on or after January 24, 2001. Vigil contends his claims did not accrue until the disclosure of the Intelligence Bureau's files in September 2002, at which time he became aware not only of the files' existence but also the "immense extent of the Spy Files maintained on him . . . ." (Appellant's Opening Br. at 5.) Federal law controls issues related to when federal causes of action accrue. *Alexander*, 382 F.3d at 1215. Claims typically accrue, triggering the statute of limitations, "when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Id*. (quotations omitted).

Vigil's argument on appeal is unavailing under our holding in *Alexander*. There, the plaintiffs were survivors and descendants of survivors of a 1921 race riot which destroyed the African-American community of Greenwood, Oklahoma. *Id.* at 1211. In 1997, the Oklahoma state legislature commissioned a study of the riot. *Id.* at 1212. Four years later, the results were released by the bipartisan commission in a final report. *Id*. The commission confirmed that public officials and the National Guard aided and abetted the violence against the African-American community. *Id*. The plaintiffs filed a complaint in February 2003, alleging civil rights claims under 42 U.S.C. §§ 1981, 1983 and 1985. *Id*. We

affirmed the district court's dismissal of the claims because they had been filed outside the statute of limitations.

Plaintiffs argued the claims did not accrue until the issuance of the final report "because, until that time, they did not know the level of culpability or responsibility of the City and State." *Id*. at 1215-16. However, we concluded their "knowledge of their physical and property-related injuries at the time of the Riot" and the general cause of those injuries was sufficient to put them "on notice that wrongful conduct caused the harm." *Id.* (citing *Baker v. Bd. of Regents of the State of Kan.,* 991 F.2d 628, 632 (10th Cir. 1993) ("[I]t is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue.")). At that point, "a plaintiff must use reasonable diligence in seeking to discover facts giving rise to a claim for relief." *Id*. at 1216.

Similarly, Vigil's own admissions demonstrate he had sufficient knowledge by 1998, at the latest, that the files existed. On July 15, 2003, at the status conference before the district court magistrate, the following colloquy took place:

> The Court: And -- and you were aware that you were the subject of -- it sounds to me that . . . you learned that you were the subject of –- or you . . believed you are the subject of Denver City Police Department files, intelligence files. You first acquired that information in 1994 and then again in 1997.
>
> Mr. Vigil: Yes, that's correct.[4]

---

[4] In other testimony, Vigil stated the response to his 1994 Freedom of Information request arrived in 1998, indicating "the Denver Police Department had collected

(Appellant's App. at 98.)  In addition, in the introduction to Vigil's 1999 book, he discusses the sources for his material, stating:  "In spite of the difficulties entailed, police documents and information about police intelligence practices do surface.  The Denver Police Department Intelligence Bureau, for example, maintained information on me as early as May 19, 1968; nor did these practices cease with the closing of the Watergate era."  (*Id.* at 54.)  Moreover, according to Vigil, his knowledge of the City's surveillance of his activities has had a chilling effect on his speech since "[t]he winter and the spring of 1968."  (*Id.* at 111.)

Given these admissions, Vigil knew the City was maintaining information regarding his activities prior to the release of his book (the alleged constitutional violation) which caused the chilling effect of the City's surveillance activities. Accordingly, the district court correctly determined Vigil was aware of his cause of action when he received the FBI information on the City's activities in 1997 or 1998, as Vigil publicly confirmed in his 1999 book.

Finally, Vigil argues the City deliberately concealed the existence of the files and, therefore, the accrual of his action is tolled.  Fraudulent concealment by defendants will in some instances toll the statute of limitations; however, to prove that the statute of limitations was tolled by a defendant's fraudulent concealment, a plaintiff must show that his ignorance of his cause of action was not the result of his lack of diligence, but was due to affirmative acts or active deception by the

intelligence information about [him]."  (Appellant's App. at 87.)  In any event, whether the Freedom of Information Act response was in 1997 or 1998, it "resulted in the release of FBI documents that indicated that the Denver police department had collected intelligence information on [him] and had maintained a file on [him]."  (*Id.* at 88.)

Defendant to conceal the facts giving rise to the claim. *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). The evidence demonstrates Vigil knew of the files by 1998. Thus, even if Vigil had presented some affirmative evidence that the City fraudulently concealed its actions, the concealment did not prevent him from learning of the files' existence and taking action.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.


**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge